Eva Morse, Administratrix, *vs.* Minneapolis & St. Louis Railway Company.

June 14, 1883.

Negligence—Defect in Railroad Track—Evidence of Other Defects Elsewhere.—In an action for damages for injuries alleged to have been caused by the negligence of a railroad company in allowing its track to be and to remain out of repair and defective, the defects in that respect, which it is claimed caused the injury, consisting in a broken rail and imperfect switch at or near the place of the accident, it is error to admit evidence of other defects at other places on the road, there being nothing in the case tending to show that such other defects in any way contributed to the injury complained of, or were the result of a cause presumptively operating at the place of the casualty, or which might have caused the defect which produced the injury.

Same—Evidence of Subsequent Acts of Defendant.—Evidence that the defendant repaired or changed the switch alleged to have been defect-

v.30—30

ive over a year after the accident, and after it had been removed to another place, is not admissible as an admission of previous negligence. This court, as well as some other courts, has held that such evidence is admissible as being in the nature of an admission of the previous unsafe condition of the thing repaired or changed, when the change or repairs were made so soon after the accident, and under such circumstances, as to indicate that they were suggested by it, and were made to remedy a defect which caused it. But it is now *held* (overruling *O'Leary* v. *City of Mankato*, 21 Minn. 65, and cases following it) that such acts are not admissible, under any circumstances, as an admission of previous neglect of duty, because they afford no legitimate basis for drawing any such inference from them.

**Master and Servant—Risks incident to Hazardous Employment—Clearing Snow from Railroad Track.**—One of the acts of negligence relied upon as a ground of recovery was the order of defendant to plaintiff's intestate to couple two engines together, tender to tender, and use them in "bucking" snow off the road, this being claimed to be a dangerous and unsafe practice. The undisputed evidence was that this was the general and common practice of the defendant and other roads in the state, well understood by all railroad engineers, including the defendant, and one which they were frequently called upon to engage in. *Held* that, under these circumstances, the dangers incident to such a practice (assuming that the company was not negligent in the matter of keeping their track and engines in proper order) must be held to have been assumed by the deceased as included in the ordinary risks of the employment in which he engaged, and therefore it was error to submit that question to the jury.

**Same—Unsafe Instruments—Evidence of Other Accidents.**—Where the sufficiency or safety of the instrument which is claimed to have caused the accident is in issue, evidence of similar accidents resulting from the same cause is competent. Such facts are in the nature of experiments to show the actual condition of the instrument, and how it served its purpose when put to the use for which it was designed, and that the common cause of these accidents was a dangerous or unsafe thing.

Appeal by defendant from an order of the district court for Freeborn county, *Farmer*, J., presiding, refusing a new trial.

*J. D. Springer*, for appellant.

*Gordon E. Cole* and *J. H. Parker*, for respondent.

MITCHELL, J.  This was an action to recover damages for the alleged negligence of defendant, causing the death of plaintiff's intestate while employed as an engineer on its railroad.  One of the acts of negligence alleged to have contributed to the injury was defendant's allowing its track to become and remain out of repair; the defects in that respect consisting of a broken rail and defective switch, which caused the engine upon which the deceased was to be thrown from the track and upset.  The rail and switch referred to were situated in the yard of defendant at Albert Lea, and near the water-tank, at which point the accident occurred.  The court, against defendant's objection and exception, allowed plaintiff to show defects generally in all the numerous tracks in defendant's yard, from the round-house, whence the engine started, to the "place where the first work was to be performed," which we understand to mean the first snow-drift, situated a short distance ahead of the point where the accident occurred.  The engine in question did not pass over any of these tracks except one, and there was nothing tending to show that any defects, except those at or near the place of the accident, in any way contributed to the injury complained of.  We think the admission of this evidence was error.  The evidence, under the circumstances, should have been limited to those defects which caused or reasonably might have conduced to produce the injury.  The mere existence of other defects in other parts of the road is not evidence that a similar defect existed at the place of the casualty, and caused it.  The only exceptions to this rule which now occur to us are where the other defects were shown to be the result of a cause presumptively operating at the place of the casualty, or where such other defects might have caused the defect which produced the injury.  But there are no facts bringing this case within any such exceptions.  Defects in other tracks in the yard at Albert Lea had no more to do with producing this accident than defects 100 miles distant.  The fact that they were in the same vicinity does not alter the principle.  If evidence of these was admissible, we see no reason why defects in any part of defendant's road might not have been shown.  The effect of this evidence was to raise false issues.  The defendant was not on trial for general negligence; nor was it liable to plaintiff for any acts of negligence except

those which caused the injury complained of. *L. & N. R. Co.* v. *Fox*, 11 Bush, (Ky.) 495; *Grand Rapids & Ind. R. Co.* v. *Huntley*, 38 Mich. 537; Pierce on Railroads, 293.

2. Plaintiff was also permitted to show that, after the accident, defendant repaired the switch alleged to have been defective. The court held, in *O'Leary* v. *City of Mankato*, 21 Minn. 65, that such evidence was, under certain circumstances, competent. This case was followed in *Phelps* v. *City of Mankato*, 23 Minn. 276, and *Kelly* v. *South. Minn. Ry. Co.*, 28 Minn. 98, and this position is not without support in the decisions of other courts. But, if competent, such evidence is only so as an admission of the previous unsafe condition of the thing repaired or removed, and, to render it admissible as such, the act must have been done so soon after the accident and under such circumstances as to indicate that it was suggested by the accident, and was done to remedy the defect which caused it. All courts who admit the evidence at all so hold. In the present case the change in this switch was made over a year after the accident, and after it had been removed to another place. Under such circumstances the repairs were, presumably, merely an ordinary betterment. Under such a state of facts such evidence would not be admissible under any rule, and its admission was, therefore, error.

But, on mature reflection, we have concluded that evidence of this kind ought not to be admitted under any circumstances, and that the rule heretofore adopted by this court is on principle wrong; not for the reason given by some courts, that the acts of the employes in making such repairs are not admissible against their principals, but upon the broader ground that such acts afford no legitimate basis for construing such an act as an admission of previous neglect of duty. A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives of others, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct

and virtually holds out an inducement for continued negligence. *Dougan* v. *Champlain Transp. Co.,* 56 N. Y. 1; *Sewell* v. *City of Cohoes,* 11 Hun, 626; *Baird* v. *Daly,* 68 N. Y. 547; *Payne* v. *Troy & B. R. Co.,* 9 Hun, 526; *Salters* v. *Delaware & H. Canal Co.,* 3 Hun, 338; *Dale* v. *Delaware, L. & W. R. Co.* 73 N. Y. 468.

3. Another of the acts of negligence relied on as a ground of recovery in this action was the order of defendant to the deceased to couple two engines together, tender to tender, to be used in "bucking" snow, in which they had necessarily to be driven at a quite high rate of speed. This, it was claimed, was a very dangerous and hazardous practice, and therefore the order referred to was improper and negligent. Upon the trial the plaintiff expressly stated "that the defect in the engines was in their being coupled together back to back; that this is the only defect claimed,"—meaning, of course, defect in the engines. The court instructed the jury that "a prompt and faithful employe, suddenly called upon by a superior to do a particular act requiring immediate attention, is not conclusively presumed to remember at the moment the defect that would make his doing the act dangerous; and even should he remember, he may suppose, from the fact that he is ordered to do the particular act, that the defect which would have interfered with the execution of such an order has been remedied. Although he may be proved to have previously known of the existence of the defect, yet it cannot, under such circumstances, be necessarily inferred that the knowledge was present to him at this particular time. Whether he did know of the defect and remembered it at the time is a question for the jury, taken in connection with the fact that he was ordered—if the evidence so shows, which is for the jury to say—by his employers to do the act with the appliances, to wit, with the engine and track, as they are shown to have existed at the time." Also: "The evidence in this case is such that the question of defendant's negligence and of contributory negligence on the part of plaintiff's intestate is for the jury to determine, and it is not such that the court can say that the negligence which caused the death of plaintiff's intestate was one of those which the intestate knew, or which, in the exercise of proper care, he might have known, to be one of those incident to the employment he was engaged in, and

the risk of which he had assumed; these questions are all proper ones for the jury, and not the court, to determine from the evidence." Also: "When a servant, in obedience to the express order of the master, runs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or it is reasonably probable may be used in safety by the use of extraordinary caution, the master is liable for a resulting accident."

There was nothing in the evidence tending to show that the deceased had any notice of the alleged defects in the track or switch which conduced to the accident. In view of this fact, and the further fact that the act of coupling two engines together, tender to tender, was spoken of as a "defect," it is evident that the language of these instructions must have been understood to refer to, or at least to include, the risks and dangers incident to this practice, independently of any defects in the track or switch. We think that, under the evidence, it stands undisputed that the coupling of two or more engines together in this manner, for the purpose of removing snow from the track, was the general and common practice of this and of all other roads in the state,—a fact well understood by all railroad employes, and which must have been fully understood by the deceased. It was a practice of long standing, and one which engineers were frequently called upon to engage in. In fact, as railroads were usually operated and managed in this state, the practice was almost a necessary one, in order to keep a road open, especially in such a winter as that of 1881. The order in this instance was received by the deceased some two hours before he started out with his engine upon this expedition, which resulted in his death. Under these circumstances, the dangers incident to the use of two engines thus coupled together in expelling snow from the road (assuming that the company were not negligent in regard to keeping their track and appurtenances in proper order) must be held to have been assumed by the deceased as included in the ordinary risks of the employment in which he engaged, and for which no recovery can be had.

We do not mean by any means to be understood as holding that a person cannot under any circumstances recover where he has engaged in or continued in an employment after he has knowledge of defects

in the instrumentalities furnished for his use by his employer. But, under the facts of this case, we hold that no recovery could be had for injuries resulting *merely* from the risks incident to the use of these two engines in the manner described. The instructions, therefore, as given, and as evidently intended to be applied to the facts, were calculated to mislead the jury. For these reasons we think there was substantial error in the trial of this case, and therefore a new trial must be ordered.

4. There remains one other point which should be considered with reference to another trial. For the purpose of showing the defective character of the switch referred to, plaintiff was permitted to show that other engines and cars missed the track at the same point, both before and after the accident complained of. The competency of such evidence under any circumstances is by many courts denied. This court has held it to be competent. · *Phelps* v. *City of Mankato, supra; Kelly* v. *South. Minn. Ry. Co.,* 28 Minn. 98.

It is, of course, not competent for the purpose of showing independent acts of negligence, but we think on principle it is clearly admissible when it tends to show that the common cause of these accidents is a dangerous or unsafe thing. It would be certainly competent to prove by an expert that, at a time either before or after the accident when the instrument claimed to have caused it was in the same condition as when the accident complained of occurred, he examined and experimented with it, and found it capable of producing like results. Hence there seems no reason for excluding ordinary experience, when confined within the same limits and for the same purpose. These facts are in the nature of experiments to show the actual condition of the instrument. Upon any issue as to the condition or safety of any work of human construction designed for practical use, evidence showing how it has served, when put to the use for which it was designed, would seem to bear directly upon the issue. It is sometimes objected that this presents new and collateral issues of which a defendant has no notice. In a certain sense every item of evidence material to the main issue introduces a new issue; that is, it calls for a reply. In no other sense does it make a new issue; its only

importance is that it bears on the main issue, and, if it does, it is competent.

Evidence of similar accidents resulting from the same cause has often been held competent for the purpose referred to. *Kent* v. *Town of Lincoln*, 32 Vt. 591; *Quinlan* v. *City of Utica*, 11 Hun, 217; *Willey* v. *Portsmouth*, 35 N. H. 303; *City of Chicago* v. *Powers*, 42 Ill. 169; *Piggot* v. *Eastern Cos. Ry. Co.*, 3 C. B. 229; *House* v. *Metcalf*, 27 Conn. 631; *Hill* v. *Portland & R. R. Co.*, 55 Me. 438; *Darling* v. *Westmoreland*, 52 N. H. 401. But, to render such evidence competent, it must appear, or at least the evidence must reasonably tend to show, that the instrument or agency whose condition is in issue was in substantially the same condition at such times as it was at the time when the accident complained of occurred. As the evidence upon another trial of this case may not be the same, we content ourselves with stating a general rule, without considering whether all the evidence of this kind introduced was competent within the rule suggested.

It is contended by defendant that the allegation of the complaint that the engine was thrown from the track by reason of a broken rail, operates as a negation of any other cause or reason. We are not prepared to say that the language of the complaint is not liable to this construction, but, inasmuch as the evidence as to other defects was not, except in a single instance, objected to on this ground, we do not feel called upon to construe the pleading at this time.

We discover no other error, but for those already referred to a new trial must be granted.

Order reversed.