JUNE TERM, 1885. 305

Bryant, Adm'r, v. The Burlington, Cedar Rapids & Northern R'y Co.

AFFIRMED.

BRYANT, ADM'R, v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN R'Y CO.

1. **Railroads**: RISKS ASSUMED BY EMPLOYES: "BUCKING SNOW." When an employe of a railroad undertakes the performance of any duty which requires him to engage in "bucking snow," he assumes the usual and ordinary hazards connected with such work, and if, in performing such work in the ordinary way, he is injured, he has no reason to complain.

2. ———: FIREMAN KILLED WHILE "BUCKING SNOW:" NEGLIGENCE: EVIDENCE. Plaintiff's intestate was a fireman on one of defendant's engines, and he was killed by the overturning of the engine while engaged in "bucking snow." After plaintiff had introduced his testimony to establish defendant's negligence, the court directed the jury to bring in a verdict for defendant, on the ground that the facts proved did not establish a right of recovery; which being done, judgment was rendered upon the verdict. Upon a review of the evidence, (see opinion,) the judgment is affirmed.

BECK, CH. J., and REED, J., *dissenting*.

3. **Practice**: EVIDENCE: USE OF DEPOSITION. Plaintiff had taken W.'s deposition, but W. was present at the trial, and was examined orally. After he had been examined he departed, contrary to the instructions of plaintiff, and plaintiff, by an amendment, raised a new issue, in regard to which he asked leave to read W.'s deposition. *Held* that the request was properly denied by the court.

*Appeal from Linn Circuit Court.*

THURSDAY, JUNE 4.

THE petition states that Albert Bryant, deceased, was an employe of the defendant, and that the engine on which he was fireman was thrown from the track with great violence, without negligence on the part of the deceased, whereby he was instantly killed. It is stated that the accident occurred because the defendant was negligent in failing to keep the track free from snow and ice; that the defendant, knowing its track was so incumbered, ran its train at a high rate of speed, well knowing that under such circumstances it was liable to leave the track; that the train on which the deceased was performing the duties as fireman was not provided with a snow-plow, and that there were two engines attached thereto; that the train was run into a large bank of compact snow and ice. The defendant denied that the accident was caused by the negligence of the defendant, and it pleaded that the accident occurred when the train and employes were engaged in "bucking snow," which was one of the usual and ordinary hazards the deceased assumed when he undertook the duties of fireman. There was a trial by jury, and at the conclusion of the plaintiff's evidence the court, on motion, directed the jury to find for the defendant, which, being done, judgment was rendered on the verdict, and the plaintiff appeals.

*Stoneman, Rickel & Eastman,* for appellant.

*S. K. Tracy* and *W. G. Thompson,* for appellee.

SEEVERS, J.—The evidence tended to show that during two days previous to the accident there prevailed an unusual snow-storm, accompanied by a severe wind, and it was very cold. No train had passed over the road for twenty-four hours because of the cold weather and snow-drifts. On the day of the accident the train in question arrived at Traer from the north.

Bryant, Adm'r, v. The Burlington, Cedar Rapids & Northern R'y Co.

It was a passenger train pulled by two engines, and to the forward engine a snow-plow was attached. The plow was left at Traer, and the train, drawn by two engines, proceeded south, and about five miles from Traer the accident occurred. The pilot on the forward engine had the spaces therein filled with strips of wood. A gang of shovelers started from Traer before the train, with orders to clear the track. They arrived at the place of the accident a short time prior to the train. The track was in good condition but for the snow-drifts, and the train was in all respects properly equipped, except that there was no snow-plow, and it was drawn by two engines. At the place of the accident there was a snow-drift which possibly was two feet deep on one rail, and six inches on the other. It was packed so hard by the force of the wind that it bore the weight of a man. Intermingled with it was dirt and gravel. The drift could be seen by the employes on the train, as they approached it, for a mile at least. The train was run into the drift at a faster speed than trains were ordinarily run on the road, but there is no evidence tending to show that such rate of speed was greater than ordinary when "bucking snow." Both engines left the track because the snow was so compact that probably the forward one "lifted;" that is, was raised above the track by the snow. There can be no doubt under the evidence that the engines left the track because of the snow, and any other finding should have been promptly set aside because unsupported by the evidence. Such being the material and, we may say, undisputed facts, did the court err in directing the jury to find for the defendant? or, in other words, is there any evidence of negligence?

I. In this latitude, storms of more or less severity, like the one in question, frequently occur. It is a duty railroad companies owe to the public to remove snow from the track, and operate the road as soon as it can be done, by the exercise of great diligence, and the use of all the means and appliances at their command. The company has the undoubted right to adopt such

1. RAILROADS: risks assumed by employes: "bucking snow."

methods for that purpose as its best judgment may dictate. It may be that it would not have the right to adopt doubtful experiments. Experience has undoubtedly demonstrated in what manner the required duty can be best performed. Such methods, it must be assumed, are known to the companies and its employes. The latter, therefore, when they undertake the performance of any duty which requires them to engage in "bucking snow," assume the usual and ordinary hazards of their occupation; and, if the effort to remove the snow by that method is made in the manner in common use, they have no right to complain if an accident occurs. *Morse v. Minneapolis & St. L. R'y Co.*, 30 Minn., 465; *Nalor v. Chicago & N. W. R'y Co.*, 53 Wis., 661, and authorities cited; *Howland v. Milwaukee, L. S. & W. R'y Co.*, 54 Wis., 226.

II. The material question, therefore, is, whether there is any evidence of negligence in this case. The burden to estab-

2. ——:
fireman
killed while
"bucking
snow:" negli-
gence: evi-
dence:

lish it was on the plaintiff. There is no evidence which tends to show that the train in question was not equipped in the ordinary manner. It seems to be assumed by counsel for the appellant that it was negligence to start the train without a snow-plow and with two engines, but this cannot be so unless this was an unusual mode, and there is no evidence which so shows. On the contrary, we are impressed that the mode adopted on this occasion is usual and ordinary on all well conducted roads in this latitude. The defendant would not be justified in relying on shovelers to remove such obstruction, and yet it did what it could in this direction. Snow can only be expeditiously removed by the use of trains, and, as we can readily see, when so engaged the train must be run at such speed as will overcome the resistance of the snow-drift. There is no evidence which tends to show that the speed of the train in question was greater than it should have been for the purpose of accomplishing the passage of the train. It is true, the engineer on the forward engine saw this drift; and, as there is no evidence to the contrary, it must be assumed that he was

a careful and competent engineer. He undoubtedly knew there was some danger incurred in running his engine and train into the drift. This danger he shared with other employes; and it must be presumed that he would not have done so if he thought he incurred danger of bodily harm. The evidence does not show that the drift in question was unusual. There was not, therefore, anything to warn the engineer that the hazard was greater than is ordinarily incurred by train employes when engaged in " bucking snow."

III. One Wilson was foreman of the gang of shovelers, and his deposition had been taken by appellant; but, as he was present in court, the defendant objected to the reading of the deposition. He was thereupon examined orally. After the plaintiff had closed his evidence, and the defendant had moved the court to direct the jury to find a verdict for it, the plaintiff asked and obtained leave to file an amendment to his petition, stating that it was Wilson's duty to inspect the track, and keep it free from snow and ice at the place where the accident occurred, and that he had knowledge of the snow drift, its extent and compactness, and that he failed and neglected to warn the employes on the train that it was dangerous to run the train into it, and that Wilson knew of the approach of the train a sufficient length of time to permit him to do so.

3. PRACTICE: evidence: use of deposition.

Counsel for the plaintiff stated that they desired to examine Wilson as a witness, but he had left the court room, although they had requested him to remain; and thereupon they asked leave to read his deposition in evidence. To this the defendant objected on the ground that there was a new issue, and they desired to and had had no opportunity to cross-examine Wilson as to such issue. The objection was sustained, and this ruling is undoubtedly correct. Wilson did not signal the train, and, clearly, it was not his duty to do so unless he had examined the drift and, as a reasonable and judicious man, reached the conclusion that the attempt should not be made to run through it.

The record before us fails to show that Wilson had examined the drift, nor is there evidence which tends to show that it was not of the usual and ordinary character in every respect. We therefore are of the opinion that the judgment of the circuit court must be

AFFIRMED.

BECK, CH. J., *dissenting.*—I. The only question to be considered in this case involves the correctness of the ruling of the district court in directing the jury to return a verdict for defendant. Conclusions upon these questions are decisive of the case. The ruling was based upon the ground that the evidence failed to show a state of facts upon which the law would authorize a recovery by plaintiff. The evidence tends to prove the following facts: The intestate was employed in the capacity of a fireman upon an engine attached to a passenger train upon defendant's road running southward from Iowa Falls, on the eleventh day of January, 1883. An unusual storm, accompanied by snow, had prevailed to such an extent as to interrupt the running of trains for near thirty hours prior to the accident. The train was drawn by two engines, the one forward having attached a snow-plow, until Traer was reached, when the engine with the snow-plow was detached, and another, without a plow, was attached in its place. The train then proceeded southward about 5 o'clock in the afternoon. A "gang" of section-men, under proper directions, had proceeded in the morning southward from Traer, removing the snow-drifts from the "cuts," and other places where it was thought proper. They had in this manner cleared the track, for a distance not shown, further than that it was less than five and a half miles, and when the train approached they were about to remove a drift of snow near the crossing of a highway, which the foreman had inspected and determined to remove. The snow at this point was from twenty inches to two feet deep, mixed with the earth borne by the wind, and was found to be so compact as to be of sufficient

strength to support the men who walked upon it, and they found it necessary to bear upon their shovels in order to force their tools into the snow. The drift was in plain view from the engine for the distance of one mile, the track being straight and level, and the foreman of the section-men plainly saw the approaching train the whole of that distance. No signals were given indicating the condition of the track. The train approached at an unusual speed, and struck the snow-drift at the speed of twenty or twenty-five miles per hour. Both engines were thrown from the track. The forward engine was turned over into the ditch of the road, and its position nearly reversed. The intestate was upon this engine, and was instantly killed.

The district court held that, upon these facts, plaintiff was not entitled to recover. The grounds of this ruling are not disclosed by the record, but counsel for defendant endeavor to support it by maintaining the following positions: "(1) If the accident was caused by the snow, then the misfortune resulted from one of the hazards naturally incident to defendant's occupation. (2) If it was caused by the absence of a snow-plow, then he waived a recovery upon that ground, because he made no objection to not having one attached. (3) There is no evidence whatever in all the case to show what caused the accident, and therefore no negligence is established against the defendant. (4) No legal damage was proved."

II. It must be first observed that the cause of the accident was a question of fact for the determination of the jury, and it was not competent for the court to determine, as a question of law, that the accident resulted from one cause or the other. If it should be found that the cause of the accident was the attempt of the engineer in charge of the train to force the passage through the drift by running his train against it with sufficient speed to throw the snow from the track, which, in the language of railroad men, is called "bucking snow," it may, for the purpose of the case, without so holding, be assumed that the intestate assumed the hazard

thereof by entering and remaining in defendant's employ-
ment. But it cannot be claimed that intestate assumed the
hazards of "bucking snow" when, in the exercise of proper
care, it should not be attempted. Nor can it be claimed that
every attempt to "buck snow" is made in the exercise of
proper care. It cannot be doubted that attempts to clear the
track in this way may be made in a manner and under cir-
cumstances which would amount to negligence, and render
the party authorizing and directing it liable for injuries result-
ing therefrom. It follows that the question of defendant's
negligence is presented in the case, even if it be conceded that
the intestate assumed the hazard of "bucking snow." This
question was not for the determination of the court as a ques-
tion of law, but was for the jury. In this view of the case
the district court erred in directing a verdict for defendant.
*Morse v. Minneapolis & St. L. R'y Co.*, 30 Minn., 465, S. C.,
11 Amer. and Eng. R'y cases, 168; S. C., 16 N. W. Rep., 358
and other cases of like effect,—holding that an employe upon a
train which is used in "bucking snow" assumes the hazard
of the work, are not in conflict with the foregoing views·
These decisions contemplate cases in which the "bucking"
is done under proper circumstances and with proper care. It
is not held therein that "bucking," under circumstances
showing negligence, may be done, and the employe be charged
with all its risks and hazards.

III. If it should be found that the accident was caused by
the absence of a snow-plow, and it be conceded for the pur-
pose of the case, without so deciding, that failure to object to
running the train without a snow-plow would waive the con-
sequence of defendant's negligence, it should be made to
appear, in order to support the waiver, that intestate knew an
attempt would be made to "buck snow," and that he was
expected to engage in that service. There is no evidence
tending to show that he possessed such knowledge. On the
contrary, he was authorized to believe that the track south of
Traer was clear of snow. The facts that the snow-plow was

Bryant, Adm'r, v. The Burlington, Cedar Rapids & Northern R'y Co.

left at that place and a gang of men was engaged in clearing the track, were sufficient to authorize the conclusion that snow-drifts would not be found which would require "bucking." Other grounds for such belief could be stated. Whether the facts authorized the conclusion that intestate waived the negligence of defendant in not providing a snow-plow south of Traer, was a matter for the jury.

IV. We think there was evidence tending to establish the negligence of defendant, which should have been submitted to the jury upon the issues in the case. This evidence relates to the speed of the train when it approached the snow-drift, showing a purpose to "buck" it, the character of the drift, the opportunity possessed by the engineer in charge of the train to determine whether it could be safely "bucked" the knowledge which the foreman of the section men had of the drift, and his failure to signal the approaching train of the danger. These and other facts, which need not be stated, were proper to be considered in order to determine the question of defendant's negligence. It cannot be said that there was such an absence of evidence of defendant's negligence as authorized the court to take the case from the jury.

V. It is lastly insisted that no damage resulting from the loss of intestate's life was proved. In the case of death produced by a wrongful act, the statute secures a remedy in favor of the estate of the deceased. Code, § 2526. The wrongful act and the consequent death being shown, the law, under familiar rules, will, without other proof, allow at least nominal damages; and, under the statute just cited, "the damages are to be disposed of as personal property belonging to the estate." The administrator may recover the damages, and their appropriation will be directed by the law.

I reach the conclusion that the district court erred in directing a verdict for defendant, and that the cause ought to be remanded for a new trial.

REED, J., concurs in this dissent.