Caldwell, J.
The facts are stated in the opinion of the court.
*156 In this case the Railroad Company was placing new ties under its road on Scoville avenue, and for this purpose had taken out the pavement between the tracks and along the outside of the track, and had excavated to a depth so that they reached their ties; and while doing so, they drew their cars over the place where the improvement was going on, by means of a rope attached to the front corner of the car, the horses traveling on the track running parallel with the one. that was being improved. Mrs. Kelley boarded a car, and while it was thus being drawn by the horses over the road, •the horses going on a trot, the car left the track and fell until the axle stopped it by hitting on the rail, and Mrs. Kelley was thrown out of the car into a pile of dirt, and claims that she received severe injuries therefrom. She claimed in her petition that this accident was caused by the negligence of the Railroad Company, and sought to recover damages for the injuries she suffered on account thereof, and obtained a verdict against the Company.
It is now averred that there was error in the trial of the ease in the court of common pleas in five particulars which I shall notice.
1. The first complaint is to this question : “ State whether along about the time of the happening of the accident, in the immediate neighborhood of the happening 'of the accident, other cars had run off the track ? ”
It is admitted in the evidence that the Railroad Company took out in this way, the pavement and dirt, and so improved its track from one end of Scoville avenue to the other, and it was all done, the testimony shows, in the same manner, and the cars were passed over these places that were torn up in the same manner as was done here, during all this time, and -in this immediate neighborhood almost, you may say. This evidence was introduced for the purpose of showing that the cars had run off the track in a place that was similarly excavated, and where the car was being similarly drawn, and the surrounding facts were about the same as existed at the *157 time that the injury was received. Now, this testimony, under the facts as proved, it is said, is not competent testimony.
We understand the rule to be that where the facts are . similar, and the circumstances are the same, testimony of this character is admissible to show notice to the Company of the danger of its car leaving the track; and not only that, but to" show the dangerous character of the track; but in no instance is it admissible to show negligence, nor .to show contributory negligence. This is the rule as laid down in the case in the Circuit Court Reports, and it is the general rule, 3 C. C. R. 640.
There is a case, referred to in the circuit court just before cited, where a steam engine left the track, and an injury was received by a person, and evidence was introduced to show that other engines had left the track at or about that place,. That evidence was admitted to show notice, and to show the' dangerous character of the track, and its situation, etc., at the-time of the accident,, or about that time. 30 Minn. 465:
But it is claimed that this question does not confine the time to its being prior to that accident. “ State whether along about the time of the happening of the accident/7 which might have been before, or it might have been after and if after, it is claimed that it is not competent. But I do> not know, if the circumstances were the same, why an accident of this kind might not be introduced in evidence, even though it occurred after, for the purpose of showing that the place was dangerous, showing that it was a place where an accident of this kind might happen.
The objection to this question is a general objection. If it had been objected to on the ground that it could not be introduced to show negligence, or that it could not be introducéd unless the time was fixed before the accident, to show notice — if the objection had been of that character, and then the question had been admitted, it is fair to presume the court would have confined the testimony to showing simply the *158 character of the place. If the court had admitted it for the other purposes, it would have been error — but being a general objection, and the testimony being admissible for one purpose* it was not error for the court to admit it; and we think there was no error on the part of the court in admitting that testi-. mony.
2. It was sought to be shown by the attorneys for the Railroad Company, that the way of attaching the rope to the, car and drawing it over these places, was the usual process of operating street cars in cases of this kind,'and this question was asked: “Describe to the jury the ordinary and usual process of operating street ears in cases where new ties are-being put under the track, over such a track, and in such a ■case as this in controversy. You may describe it;” and a, number of other questions which are to the same effect.
Now, there was no complaint in the petition as to the manner of drawing these cars over the track. After a careful examination of the petition we conclude that the only complaint, made in regard to this in the petition is that the rate of Speed was too rapid. It is operating at too great a speed over the road that is attributed as, negligence. It was the duty of the court to keep the testimony within the issues of the pleadings; and as there was no issue at all in the pleadings as to the mode and manner of operating the car, but simply, as to the rate of speed, this evidence was not material to any issue in the case, and therefore it was properly excluded.
. 3,- There are two exceptions taken to the charge of the ■court. The first is to this portion of the charge: “Now, -gentlemen, to enable you to determine these questions, I say to you, it being admitted in this case that the defendant was a common carrier of passengers, and that plaintiff at this time was- a passenger for hire on one of its cars, it then became the; duty of the defendant to - exercise the highest degree of care in the discharge of its duty to this plaintiff, to give her a safe carriage over its line to the place where she desired to go; -that is, it was bound to use such care as the most prudept *159 and cautious man would use in the transaction of that business, under like circumstances where the dangers were, of the character to be apprehended or expected on the occasion.”
It is contended that the jury by this language were left by the court to go out in the world and find the one most prudent :and cautious man, and then measure the care that was exercised by the Railroad Company by the care and caution of that most .prudent and cautious man. While the language is perhaps .not just as it should be, yet we cannot believe that the jury understood that they were required to do anything of that kind; but did understand that when the court speaks here of the most prudent and cautious man, it means the most prudent .and cautious man as a sample of the class of men who are most prudent and cautious when engaged in business of this •character, where dangers of this kind are to be apprehended or expected. We think the construction sought to be placed •on this language would be taking the figure of speech used by • the court entirely to literally, and that the jury could not have so understood it. The jury must have understood the • court to say that the defendant must exercise tlie greatest care that persons do who are engaged in a business of this character where accidents of this nature are likely to occur. And ,if that was the understanding the jury must have gotten .from this language, if that is the natural purport of it, why, we think it was not error on the part of the court to give it, although it was not very wise to charge just in that language.
4. Again, it \s objected that the court said that the jury ■might infer negligence from the facts that surrounded the accident that had happened, and the accident itself and the nature of it. This is the language he used : “ Or it may be established,” that is this negligence, “ may be established by the .accident itself and the circumstances surrounding it under, which it occurred, from which you may infer negligence to chave been the cause of the injury.”
*160 Our Supreme Court has allowed negligence to be inferred from certain circumstances, but it has so far confined the circumstances to the very unusual case of where two engines came together on the same track. It is perfectly evident that that could not happen without some person being to blame,, and some person connected with the railroad. But it was a common occurrence for street cars to leave'the track, especially the old cars that were drawn by horses on the old tracks, and perhaps to infer negligence just from the fact of the thing happening itself would be going too far under the rule as established by the Supreme Court.
But the language used is : “ Or it may be established by the accident itself and the eircnmstauces surrounding it under which it occurred, from which you may infer negligence to have been the cause of the injury.” Now, we think that circumstantial evidence is as proper in a case of accident or in a case to show negligence as any other kind of evidence. The court did not authorize negligence to be inferred simply from the accident occurring — from the accident itself, but told the jury that they might infer it not from the accident only, but from the accident and the circumstances surrounding it under which it occurred; that under all the circumstances of the case it was for them to say whether there was negligence on the part of this company or not. No one attempted to tell what caused this car to leave the track at this time; and it left the track in such a manner that it would seem that the way of drawing it could not have been the cause of it. It was drawn by horses on one side of the track, and went off on the opposite side. Now, we think that if all the circumstances attending the matter were given as they were in this case, and no one whs able to tell what actual thing did it and how the company caused it to be done, yet all the circumstances were given surrounding the fact, it would be proper for the court to leave to the jury the circumstantial evidence, and for them to say whether these circumstances showed negligence on the part of the company. And that is exactly what the court did *161 befe, and we think therefore that the court did not err, in-giving that rule to the jury, and it was a proper ease in which ¡to give it!
5. One other question arises, and that is, does the evi1 dence warrant the amount of damages awarded by the vérdiet of the jury?
It is not contended really but that this woman may have •received some injury from being thrown from the car into the pile of dirt, but it is claimed that the suffering she endured was due more to her change in life than to the receiving of ¡this fall at this time. It is contended that the amount of the verdict in connection with the fact that plaintiff did not appear, at the time of the accident, to be much injured, and went on to her husband’s office and then home before she felt-.any great pain or serious trouble, and the further fact that the symptoms she afterwards suffered are in a line with those that frequently follow a change of life — it is claimed that these' facts will lead the court to infer that the jury, by the largeness of -their verdict, has visited upon this company the sufferings of this woman which came, not from the injury but' from her change of life.
- A number of physicians testified as experts, and according' to. these physicians, many of the ailments that Mrs. Kelley-complained of during the time of her illness, and from which' she was still suffering somewhat at the time of the trial, were' Ailment which might follow the change in life, and also that might follow an injury of the spine or a concussion of the brain. Many of the symptoms which follow the change of life are parallel to, and seem to be largely similar to the symptoms which follow an injury of the spine or concussion of the brain. And yet there were some distinctions made by the doc-’ tors. Some symptoms would follow an injury of.the spine -or concussion of the brain which would not follow a change •of life.
But the trouble is, in reading this testimony, we .find thátthe testimony quite clearly shows that this woman hadn’t1 *162 given any indications at all of having arrived at that period referred to as the change of life; there was nothing to indicate that there was any serious disturbance in this direction at the time of this accident. That period had certainly not set in before, and there was nothing to indicate that that period had really commenced up to the time of the trial of this case in the common pleas court, except that she had some of the symptoms that attend women under such circumstances. And yet it is true, as I have already stated, from the testimony of these doctors, that the same symptoms which would follow an injury such as that she received, an injury to the spine or concussion of the brain, would also accompany the change of life. Yet, taking all this testimony into consideration, that of all the doctors, and all the circumstances and the testimony of the physicians that she had not yet met anything that would indicate any change in the menstrual period, we think the jury were justified from this testimony in finding that whatever injuries this woman had suffered were not from change of life, but from the injury she received from being thrown from this car.
It certainly is self-evident that the car traveling at a rapid rate and stopping suddenly would give a great shock; and the shock of this car, as testified to by various persons that were on it, was quite severe indeed. Although thrown on to a dirt pile instead of the pavement, yet she was thrown in such a manner with her head down that a lady of her size and weight falling in that way would be very likely to receive some serious injury that would not be fully indicated at the time that the accident happened.
■ We don’t see how, under this testimony, we can interfere with the amount of damages. They are very heavy, it is quite a large verdict, $10,000,00; but at the same time we don’t see these witnesses,' we don’t see the plaintiff, Mrs. Kelly. The court below did, and the jury did. The jury saw the witnesses, they heard all this testimony, sawthe character and knew the character of the persons who testified, and it is one *163 of the most difficult things we caD do under such circumstances to interfere with a judgment. We should not disturb it unless it is so large that we are satisfied the jury was governed by prejudice, or passion, or feeling, instead' of by cool and calm judgment, and we cannot really say that, in this case, under the circumstances.
Russell & Rice, Attorneys for plaintiff in error.
Everett, Dellenbaugh & Weed, Attorneys for defendant in error.
The judgment will be affirmed.