## SCOTT *v.* DISTRICT OF COLUMBIA.*

---

PERSONAL INJURIES; NEGLIGENCE; DIRECTING VERDICT; LIABILITY OF MUNICIPAL CORPORATION; DEFECTIVE SIDEWALK; REPAIR OF SIDEWALK AFTER ACCIDENT.

1. When the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.

---

*Highways—Liability of Municipality for Injuries.*—The American and English authorities passing upon various questions involving the liability of municipalities for injuries to travelers upon streets are presented in the following editorial notes: Municipal liability for injury to travelers from defective plan of street construction as distinguished from other defects, note to *Stone* v. *Seattle,* 67 L. R. A. 265; right of children to protection against dangerous condition of highway, note to *Gibson* v. *Huntington,* 22 L. R. A. 561; liability of municipality for injuries caused by horse becoming frightened at object in highway, note to *Bowes* v. *Boston,* 15 L. R. A. 365; effect upon right of recovery, of fact that horse was frightened when accident occurred on defective highway, note to *Schaeffer* v. *Jackson Twp.* 18 L. R. A. 100; liability for injury to person in street from fall of wall or building, note to *Ryder* v. *Kinsey,* 34 L. R. A. 559; liability of counties for torts and negligence as to highways, note to *Markey* v. *Queens County,* 39 L. R. A. 53; liability of municipality for ice on streets or sidewalks, note to *Hausmann* v. *Madison,* 21 L. R. A. 263; liability for permitting water to accumulate and freeze on sidewalk to the injury of travelers, note to *Brown* v. *White,* 58 L. R. A. 321.

2. The District of Columbia is not an insurer of the safety of travelers upon the streets.

3. In order to enable a plaintiff to hold the District of Columbia liable for injuries caused by an accident occurring on a street, he must show that such injury was caused by the defective condition of the street or sidewalk, and that such defective condition was caused by the negligence of the defendant. (Following *District of Columbia* v. *Haller,* 4 App. D. C. 414.)

4. Where, in an action against the District of Columbia to recover damages for injuries sustained by slipping on an iron sewer plate on a sidewalk, on a damp day, the only evidence of the defective condition of such iron plate at the time of the accident is that the manhole cover in the center of the plate was worn smooth, and that a witness had seen persons slip on the plate, whether before or after the accident to the plaintiff not being shown; and where it appears that the plaintiff did not slip on the manhole cover, but on another portion of the plate; and there is nothing to show the condition of the plate before the accident,—it is not error to direct a verdict for the defendant.

5. In an action for personal injuries caused by an alleged defective condition of a sidewalk, it is not permissible to introduce evidence of a subsequent alteration or repair of such sidewalk by the defendant.

No. 1615. Submitted February 16, 1906. Decided May 1, 1906.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the court in an action to recover damages for personal injuries.    *Affirmed.*

The COURT in the opinion stated the facts as follows:

Annie E. Scott, the appellant, the plaintiff below, sued the District of Columbia for its negligence, and for injuries suffered thereby. At the close of the plaintiff's case, at the trial below, the court directed the jury to return a verdict for the District of Columbia, the appellee, the defendant below. From the judgment on that verdict the plaintiff below appealed. This ruling of the court requires us to carefully scrutinize the evidence in the record, which is as follows:

The appellant, Annie E. Siebold, then unmarried, with Gertrude Robinson, on April 13, 1901, about 9 o'clock in the

morning, departing from the Pennsylvania railroad station in Washington, went down the south side of B street and crossed Seventh street diagonally to the Center Market corner. She "stepped up," and as she stepped her left foot slipped from the top plate there, and her right foot slipped and turned under. She tried to catch hold of Miss Robinson, who had also stepped on the plate, but, failing in that, the appellant fell back into the street. An old woman came to her assistance, and helped her up. She then saw the plate at the corner, and saw that it was an old plate which looked as if it had been worn smooth. By plate she meant the whole top of the sewer trap. Coming from Baltimore daily for more than two years, she usually approached Kann's store by crossing from B street to the market corner where she fell. The day of the accident it was not raining, but it was "a gloomy day with a gloomy, moist atmosphere."

Gertrude Elliot, formerly Gertrude Robinson, testified that she was appellant's companion, and "stepped up" from the gutter just where the sewer is; she reached it first, and, just as appellant "stepped up," she slipped and grabbed hold of the witness, who could not hold her, and appellant fell back into the street. The witness did not particularly observe the place, and did not observe the plate more than any plate on the street, and could not remember whether it was worn or not. She remembered it was not in place. She traveled that way every morning for two years, and supposed she had stepped upon the sewer trap, but she had never slipped. When the appellant, in falling, grabbed her, the witness was on the plate, and was pulled back into the street.

Lewis P. Siebold, uncle of the appellant, a day or two after the accident went to the southeast corner of the market house at the northwest corner of Seventh and B streets, and thoroughly examined the sewer plate at that point. He found it a corrugated iron-plate sewer trap at the intersection of the street, and it was worn smooth and bright. When he rubbed his foot on it, it would brighten up right away, and it was on an incline toward the building line from the curb down.

Matilda Fendall (colored) testified that she had a market

stand during many years at the corner of Seventh and B streets; that she knew the plaintiff, who bought flowers from her every Saturday morning. On the morning in question she saw the appellant coming up B street, and later saw her fall on the iron at the corner, and helped her up. The witness had seen a lady fall there once and cut her knee, and at another time she saw a gentleman fall, and had seen people fall there several times. It was a round iron in the trap, and very smooth; whether the part that was smooth was back against the curbstone or a little west from it, she could not say, but it was the plate that was lifted out of the place to clean the sewer. She did not pay attention, and could not tell whether the gentleman fell before the appellant's fall, or whether the other lady fell before or after the plaintiff's fall, though she had first said the other lady fell before the appellant, or whether or not there was snow or ice on the trap then. She did remember it was not drizzling upon the morning in question.

George W. Siebold, the father of the plaintiff, examined the plate six days after the accident, and found it was worn smooth. It had been a corrugated plate of sheet iron, not very thick, covering the immediate corner of the sewer; about 25 inches back from that there was a manhole for the purpose of getting into the sewer. The iron was rather high in front, and was depressed three quarters of an inch as it ran back; both sides of this iron leading from the east and the south were more worn than directly in the center. The appellant, several physicians, and other witnesses gave evidence tending to show that, by reason of her fall, the appellant had received serious and permanent injuries.

*Mr. Henry H. Glassie* and *Mr. Myer Cohen* for the appellant.

*Mr. Edward H. Thomas,* Corporation Counsel, for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

The Supreme Court has said: " 'It is the settled law of this

court that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.' *Randall* v. *Baltimore & O. R. Co.* 109 U. S. 478, 27 L. ed. 1003, 3 Sup. Ct. Rep. 322;" *Metropolitan R. Co.* v. *Moore,* 121 U. S. 558, 570, 30 L. ed. 1022, 1025, 7 Sup. Ct. Rep. 1334.

And again, the court said in a case wherein it held the trial court did not err in directing a verdict for the defendant and in failing to leave the question of negligence to the jury: "That there are times when it is proper for a court to direct a verdict is clear.    'It is well settled that the court may withdraw a case from them altogether and direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it.    *Phœnix Mut. L. Ins. Co.* v. *Doster,* 106 U. S. 30, 32, 27 L. ed. 65, 66, 1 Sup. Ct. Rep. 18; *Griggs* v. *Houston,* 104 U. S. 553, 26 L. ed. 840; *Randall* v. *Baltimore & O. R. Co.* 109 U. S. 478, 482, 27 L. ed. 1003, 1005, 3 Sup. Ct. Rep. 322; *Anderson County* v. *Beal,* 113 U. S. 227, 241, 28 L. ed. 966, 971, 5 Sup. Ct. Rep. 433; *Schofield* v. *Chicago, M. & St. P. R. Co.* 114 U. S. 615, 618, 29 L. ed. 224, 225, 5 Sup. Ct. Rep. 1125;' *Delaware, L. & W. R. Co.* v. *Converse,* 139 U. S. 469, 472, 35 L. ed. 213, 215, 11 Sup. Ct. Rep. 569.    See also *Aerkfetz* v. *Humphreys,* 145 U. S. 418, 36 L. ed. 758, 12 Sup. Ct. Rep. 835; *Elliott* v. *Chicago, M. & St. P. R. Co.* 150 U. S. 245, 37 L. ed. 1068, 14 Sup. Ct. Rep. 85.    *  *  *  The judge is primarily responsible for the just outcome of the trial.    He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who, in our jurisprudence, stands charged with full responsibility.    He has the same opportunity that jurors have for seeing the witnesses, for noting all those matters in a trial not capable of record; and when, in his deliberate opinion, there is no excuse for a verdict save

in favor of one party, and he so rules by instructions to that effect, an appellate court will pay large respect to his judgment." *Patton* v. *Texas & P. R. Co.* 179 U. S. 658, 659, 45 L. ed. 361, 363, 21 Sup. Ct. Rep. 275.

On a rainy day, or on a "gloomy day with a moist atmosphere," all sidewalks may become more or less slippery, if not unsafe. "That the District of Columbia is not an insurer of the safety of travelers upon its streets is, of course, unquestioned." *District of Columbia* v. *Moulton,* 182 U. S. 576, 578, 45 L. ed. 1237, 1239, 21 Sup. Ct. Rep. 840.

The appellant was the only person who testified to the condition of the sewer plate on the morning of the accident, and all she said was that after she was helped up "she saw the plate at the corner, and that it was an old plate and looked as if it had worn smooth, and as if it had had a great deal of traffic." The two Siebolds say the plate inclined slightly inward from the curb.

The witness Matilda Fendall, whose market stand was nearby, was impressed that it was a round iron in the trap that was very smooth; "it was the plate that was lifted out of place to clean the sewer." G. W. Siebold testified that the manhole was 25 inches back from the immediate corner of the sewer; but he does not say that the cover of this manhole was smooth. Yet it was on this round iron in the trap which the witness Matilda Fendall said was very smooth that she saw the gentleman and lady fall. G. W. Siebold says the sewer plate was smooth, particularly on the east and south sides, and in the center not so much so, while L. P. Siebold says the plate was smooth and bright, and would brighten up if he rubbed his foot on it; but whether he rubbed his foot on the edges described by his brother, or on the round iron, the plate that was lifted out of place to clean the sewer, described by Matilda Fendall, or over the whole plate, does not appear.

This court has held the District of Columbia accountable in cases of injury shown to have been caused by defective conditions of the sidewalk, and in some instances where the defect was slight; but, as was said in *District of Columbia* v. *Haller,* 4 App. D. C. 414, the injury must be shown to have been

caused by the defective condition of the street or sidewalk, such defective condition being shown to exist by the negligence of the defendant. It may be this plate had long been as the appellant says it looked directly after the accident, yet the only testimony of the condition of the plate before the accident was that of Matilda Fendall, who does not say the plate was smooth, but says the round iron over the manhole was smooth; and her testimony was that it was on the round iron that she saw the man, and there probably she saw another woman, fall, each at different times, both of which times, from her testimony, may have been subsequent to the accident which happened to the plaintiff. At least, she does not finally say either accident preceded the accident to the appellant. Such a plate in a sidewalk, smooth in some spots and not smooth in other parts, may yet be reasonably safe for pedestrians. It is undisputed that this point was on a much-traveled way. The appellant and her companion habitually for two years went over it without accident.

The court below was justified in concluding there was no positive evidence of any accident having happened at that place before the day in question, and we are not prepared to say that, after scrutinizing the evidence, the court was not justified in concluding that this plate was reasonably safe for pedestrians on such a thoroughfare. Every case of this character must be determined by its peculiar circumstances. With all the witnesses before the court, and fuller statements than are usually imported into the record, the court may have been fully justified in believing the evidence was conclusive that the appellant fell by accident, and not by reason of the defective condition of the plate as this plate was described at the trial.

If this frequented corner had been dangerous, and had remained in a dangerous condition at this point for a considerable time, it was the duty of the plaintiff below to show that such condition existed and had continued for some time before the accident. We are not convinced that it was the duty of the court to assume that the plate and cover of the manhole were, on the day of the accident, precisely as they had been continuously for a considerable time before the accident, and there-

upon to permit the jury to assume such fact. The only proof was, we repeat, Matilda Fendall's statement that the manhole cover, "the round iron," was smooth; and it is plain the appellant fell before she reached it.

In *Cromarty* v. *Boston,* 127 Mass. 329, 34 Am. Rep. 381, the decision was the ruling of a divided court, and the opinion says: "It is to be remembered that the question of due care on the part of the city of Boston is not involved. The liability of cities for defects in highways is created wholly by the statute, and, if the defect has existed for twenty-four hours, does not depend in any degree on the carefulness or negligence of the city."

The familiar rule concerning negligence and constructive notice which the court below obeyed was that clearly stated in *District of Columbia* v. *Woodbury,* 136 U. S. 450, 463, 34 L. ed. 472, 477, 10 Sup. Ct. Rep. 990, and applied in *District of Columbia* v. *Boswell,* 6 App. D. C. 416.

In his able and ingenious argument the appellant's counsel insisted, as he must insist, that the appellee upon a much-used sidewalk had placed an iron sewer plate at the point where the appellant was injured, and had allowed it to remain until it became a smooth, polished surface, and had permitted it to become inclined at such an angle from the street way to the market house as to increase the danger to pedestrians.

It is obvious that the learned court below concluded that there was no evidence legally sufficient to show the condition of the sewer plate and manhole prior to the accident; and the evidence that this part of the sidewalk was not reasonably safe appeared so far insufficient that, under the rule we have first stated in this case, the learned court below concluded the evidence legally insufficient, and in so deciding had a right to give proper weight to the statement of the appellant that the accident happened on "a gloomy day, with a gloomy, moist atmosphere."

It is not necessary to consider the numerous cases cited upon the subject of the duty of inspection and of constructive notice to the appellee; nor need we discuss the well-settled rule determining the province of the jury in considering accidents alleged

to have been occasioned by the negligence of municipalities. The only matter here is the application of that rule. In the absence of legally sufficient evidence that the condition of the sidewalk at this point was the same prior to the day of the accident as it was at that time, and in the absence of definite evidence of any accident having happened at this place prior to the day of this accident, we are not prepared to say that it was the duty of the court to let the jury loosely infer essential facts not proved, and then set aside the verdict and order a new trial. Our conclusion is that the court below did not commit reversible error in its instruction to the jury to return a verdict for the appellee.

The second assignment of error relates to testimony offered by the appellant. L. P. Siebold had testified that two days after the accident he examined the iron sewer plate at the northwest corner of Seventh and B streets, and describes its condition as we have stated. He proceeded to show that, ten days later, he went back to the place, whereupon he was asked whether he saw the same plate there on the second visit, and the court below sustained the objection of defendant's counsel to this question, and to any answer thereto. In our opinion, the principle which was involved in the ruling of the learned court below is sustained by the opinion of the Supreme Court in *Columbia & P. S. R. Co.* v. *Hawthorne,* 144 U. S. 202, 206, 36 L. ed. 405, 406, 12 Sup. Ct. Rep. 591. Said Mr. Justice Gray: "This writ of error, therefore, directly presents for the decision of this court the question whether, in an action for injuries caused by a machine alleged to be negligently constructed, a subsequent alteration or repair of the machine by the defendant is competent evidence of negligence in its original construction. Upon this question there has been some difference of opinion in the courts of the several States. But it is now settled upon much consideration, by the decisions of the highest courts of most of the States in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant has been negligent before

the accident happened, and is calculated to distract the minds oi the jury from the real issue, and to create a prejudice against the defendant.    *    *    *    The true rule and the reasons for it were well expressed in *Morse* v. *Minneapolis & St. L. R. Co.,* above cited, in which Mr. Justice Mitchell, delivering the unanimous opinion of the supreme court of Minnesota, after referring to earlier opinions of the same court the other way, said: 'But, on mature reflection, we have concluded that evidence of this kind ought not to be admitted under any circumstances, and that the rule heretofore adopted by this court is on principle wrong; not for the reason given by some courts, that the acts of the employees in making such repairs are not admissible against their principals, but upon the broader ground that such acts afford no legitimate basis for construing such an act as an admission of previous neglect of duty.   A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards.   The more careful a person is, the more regard he has for the lives of others, and more likely he would be to do so; and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence.   We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence.'   30 Minn. 465, 468, 16 N. W. 358."

In the case before us the only effect of admitting the answer would have been to prejudice the jury against the appellee, as the Supreme Court suggests in the *Hawthorne Case* just quoted. The same witness has been permitted to testify to the .condition of this plate after the accident.   A patent defect of the appellant's case was the absence of sufficient testimony as to the condition of the plate before the accident.   We find no error in the ruling of the court upon this point.

The judgment of the court below must be affirmed with costs, and it is so ordered.                    *Affirmed.*