FRED MILLMAN AND MARGARET MILLMAN, PLAINTIFFS-RESPONDENTS, v. UNITED STATES MORTGAGE AND TITLE GUARANTY COMPANY OF NEW JERSEY, A BODY CORPORATE, DEFENDANT-APPELLANT.

Argued May 3 and 4, 1938—Decided August 31, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the appellant, *Joseph C. Paul* (*Harry E. Walburg* and *William H. D. Cox,* of counsel).

For the respondents, *Leonard G. Brown* (*Gerald T. Foley,* of counsel).

The opinion of the court was delivered by

HEHER, J.  This action sounds in tort.  The gravamen of the complaint is negligence in the maintenance of a stairway for the common use of the tenants and occupants of a three-story apartment house in the city of Orange, possessed and controlled by defendant—(a) "improper in design and construction for the purpose intended and to which it was dedicated," and (b) "in a condition of disrepair dangerous to the safety of persons" lawfully making use thereof.

Plaintiffs were occupants of a second floor apartment under a tenancy contract with defendant; and, on June 6th, 1935, between nine-thirty and ten o'clock in the morning, Margaret Millman suffered personal injuries in consequence of a fall while descending the stairway—the proximate result, so it is said, of defendant's negligence in the particulars mentioned. She testified that her heel caught on the metal nosing of the fifth step, and she thereby lost her footing and fell.  Her husband testified that an examination of the step shortly after the accident disclosed "a screw about six inches from the edge of that particular molding on the step," and that "where the screw was it started to bend there and went up on an angle to almost three-quarters of an inch."  Plaintiffs—the husband sued *per quod*—were given a verdict by the jury empanelled to try the issues; and defendant appeals from the consequent judgment.

*First:*  The initial point made is that there was harmful error in the introduction from two witnesses called by plaintiffs of evidence relating to the condition of the stairway some two and a half years after the occurrence of the mishap,

when they made their first examination of the premises. We find it to be insubstantial.

The objection was rested upon the grounds that such testimony was "entirely too remote," and there was "no proof of any change." One of these witnesses, Miller, was a builder of apartment and dwelling houses; the other, Golinski, was an architect and civil engineer. They were called primarily to give expert testimony as to general trade standards in the construction of apartment house staircases, and the conformance *vel non* of this particular stairway construction to the accepted standard as they conceived it, and not to establish a negligent state of disrepair. While their conclusions were based in part upon the inspection thus made of the premises, they were plainly rested upon the hypothesis that such was the condition at the time of the happening of the accident adverted to. And the foundation in this particular had been laid. Fred Millman had testified—in part on cross-examination—that, structurally, the stairway, especially as regards the tread upon which his wife lost her footing, at the time of the examination made by these witnesses, and as late as one week before the commencement of the trial, was the same as on the day of the accident, and for a year prior thereto. There had been no structural change in the meantime.

In this connection, it is pertinent to note that the structural defect found by these witnesses was the misplacement of an end screw employed to affix the flexible brass nosing to the tread—at a point five and three-quarters inches rather than a half inch from the end—evidenced by the raising of that end of the nosing. The setting of the screw one-half inch from the end was essential, so these witnesses testified, "to keep the end of the nosing firmly fastened to the tread"—the putting of the screw five and three-quarters inches from the end would cause "the nosing to spring up."

But appellant points out that the witnesses "testified specifically how far the brass nosing projected above the tread on the end;" and it is argued that this was inadmissible as showing the condition of the tread at the time the injury was sustained. It suffices to say as to this that the question itself

was directed exclusively to the "structure of the nosing," and there was no motion to limit the testimony to the particular issue upon which it was adduced, or to have the jury instructed to disregard that which was irrelevant on the issue of negligent disrepair. Moreover, the trial judge, in an adequate presentation of the law applicable to the facts, made clear the distinction.

It is elementary that the condition of a place or thing at the time of an injury may always be evidenced by showing its condition before or after that time, provided no substantial change has occurred. The propriety of an inference in the individual case will depend on the likelihood of intervening circumstances as the true origin of the subsequent existence. 1 *Wigmore on Evidence* (*2d ed.*), §§ 283, 437.

*Second:* It is next urged that the trial judge erroneously overruled defendant's objection to a question propounded to the witness Golinski as to whether, between the time of his first inspection of the premises on December 29th, 1937, and his second on the opening day of the trial, January 3d, 1938, "any change in the end of the nosing" had been made. The answer was that, "at the edge of the nosing and near the rail * * * a big nail" had been "put in," and that "around the screw" there was "a rise of three-sixteenths of an inch," which one could still "kick" and "stumble on;" and the insistence is that this testimony contravened the general rule that evidence of subsequent changes, repairs or precautions against recurrence of the mishap is inadmissible on the issue of negligence.

It is also assigned for error, on the same ground, that like testimony was adduced, over objection, on the cross-examination of witnesses called by defendant, and that two photographs of the stairway made on behalf of plaintiffs during the course of the trial, and therefore after the making of the changes adverted to, were introduced into evidence.

It is the established rule in this state that such evidence is not admissible "as showing negligence or as amounting to an admission of negligence." *Perry* v. *Levy,* 87 *N. J. L.* 670; *Jerolamon* v. *Belleville,* 90 *Id.* 206; *Lombardi* v. *Yulinsky,*

98 *Id.* 332. The rationale of the rule is that the admission of such evidence on this particular issue necessarily proceeds on the erroneous assumption that the landowner, in taking measures to guard against a recurrence of the injury, evinces a consciousness of actionable negligence on his part, and disregards the teachings of experience that injuries are frequently the result of inevitable accident, and that the injured person is ofttimes guilty of contributory negligence. Such evidence is excluded on the ground that the supposed inference from the improvement of the injury-causing object is not the "plain and most probable one." Moreover, sound policy and reason dictate that the landowner fully discharging the duty of reasonable care imposed upon him by the law should not be under a penalty for improving the place or thing that had caused the injury, so as to obviate the risk of recurrence of the injury to others. 1 *Wigmore on Evidence,* § 283.

It will not be amiss to make reference, for the reason of the rule, to some of the cases cited by Professor Wigmore. In *Hart* v. *Lancashire and Yorkshire Railway Co.,* 21 *L. T. R.* (*N. S.*) 263, Baron Bramwell said: "People do not furnish evidence against themselves simply by adopting a new plan in order to prevent the recurrence of an accident. I think that a proposition to the contrary would be barbarous. It would be (as I have often had occasion to tell juries) to hold that, because the world gets wiser as it gets older, therefore it was foolish before." And in *Morse* v. *Minneapolis and St. Louis Railway Co.,* 30 *Minn.* 468; 16 *N. W. Rep.* 358, we find the following: "A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives of others, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct, and virtually

holds out an inducement for continued negligence." In *Terre Haute and I. R. Co.* v. *Clem,* 123 *Ind.* 18; 23 *N. E. Rep.* 965, it is said: "A rule which so operates as to deter men from profiting by experience and availing themselves of new information has nothing to commend it; for it is neither expedient nor just."

But testimony inadmissible for this purpose is not to be excluded if otherwise relevant, material and competent. For instance, evidence of repairs to a roof after the event was held to be admissible to show "the possession of the landlord," and also that there was "a leak in the roof," the ground of complaint, as bearing on the "landlord's liability, not his negligence." *Perry* v. *Levy, supra.* In *Jerolamon* v. *Belleville, supra,* a suit for damages ensuing from the overflowing of plaintiff's lands by water, proof of changes made by the defendant in the drainage system after the occurrence of the injury was held admissible on cross-examination of defendant's engineer, who had denied in his testimony "that the flood water had run down the street in any such quantity as to do material damage to the roadway and lead defendant to provide for it in other ways," on the theory that it sustained the inference that, "unless there were a material amount of storm water, the culvert would not have been built, and its building was evidential of the incorrectness of the witness' statement." And in *Lombardi* v. *Yulinski, supra,* testimony of the placing of a warning light on a "pile of bricks" placed in a highway, after plaintiff's automobile had collided with it, was permitted for the purpose of affecting defendant's credibility as a witness.

Here, as we view the circumstances, the challenged testimony was admissible. One of the basic inquiries was the existence of the pleaded structural defect at the time of the mishap; and the evidence thus elicited had a logical probative value in the resolution of that question. Reason dictates that evidence rationally tending to demonstrate the asserted fact shall be admitted, unless in contravention of sound policy as expressed in some rule or doctrine of law; and, in the application of this principle, no rule is better settled than

that a fact inadmissible for one purpose may be admissible for other purposes. Defendant denied the claimed structural deficiency. It maintained that, at the time of the happening, the nosing on the fifth step was properly held in place by eight screws, one close to the end in question; and, in proof of this, a photograph of the step, taken according to the testimony on November 13th, 1935, was introduced into evidence, supplemented by evidence adduced from the superintendent of the apartment house that, from the date of the accident until the taking of the photograph, there was no "change in the nosings or treads" of the stairway, and that "no nails or screws" were "put in or taken out," but that later, in the year 1937, new nosings were placed on the treads "where it was necessary," although he was unable to say that the fifth step was one of these. But the witnesses for the respective parties differed as to what the photograph disclosed respecting this crucial issue. Plaintiffs' witnesses, Miller and Golinski, having examined it with the aid of a magnifying glass, both testfied on cross-examination that it did not exhibit a screw or nail within five and three-quarters inches of the end of the nosing. And, as stated, they testified that at the time of their inspection of the nosing, on December 29th, 1937, there was no screw or nail puncture in this unfastened portion of the nosing, while on January 3d, 1938, they found that it had been "fastened down" with nails driven through it into the tread. Thus it is that this testimony bore upon the essential question of the time when the nosing was nailed down. It tended to corroborate Fred Millman's testimony, and to discredit the defense as regards the existence of the asserted structural defect from the time of the accident until shortly before the trial.

To obviate the risk of a prejudicial use of testimony admissible for one purpose but not for another, the trial judge is obliged, by an instruction, if a specific request is made, to limit its application to the issue upon which it legally bears. *Trenton Passenger Railway Co.* v. *Cooper,* 60 *N. J. L.* 219; *Perry* v. *Levy,. supra; Jerolamon* v. *Belleville, supra; Lombardi* v. *Yulinski, supra.* Here, again, the trial judge, without request, delivered an adequate, cautionary instruction.

*Third:* What has been said disposes in the main of the claim of error in the denial of defendant's motion to strike out the testimony of plaintiffs' witnesses, Miller and Golinski, as regards the knowledge acquired from their inspection of the staircase. As to the propriety of the exception, it is to be observed that the motion was properly denied on the ground that it embraced evidence plainly admissible, *i. e.,* that pertaining to construction standards.

*Fourth:* There was evidence tending to show that Mrs. Millman suffered concussion of the brain as a result of the fall. The following day she was seized with dizziness and fell through a window of her apartment into the courtyard below, thereby sustaining severe injuries; and it is the insistence of defendant that the trial judge erred "in submitting to the jury the issue of causation and damage arising out of the second accident." The specific point made is that the injuries resulting from the second mishap were not "the natural and proximate effect" of its negligence, in that they were not such as "an ordinary, prudent man ought reasonably to have foreseen" as a consequence "of the alleged defective condition of the nosing." The point is not well made.

While it is the general rule that damages chargeable to a tort-feasor are confined to the natural and proximate effects of his delinquency (*Migliaccio* v. *Public Service Railway Co.,* 101 *N. J. L.* 496; *Wiley* v. *West Jersey Railroad Co.,* 44 *Id.* 247, 251), that requirement is met if the damage suffered be "the legitimate sequence of the thing amiss. The maxim of the law here applicable is, that in the law the immediate and not the remote cause of any event is regarded; and in the application of it the law rejects, as not constituting the foundation for an action, that damage which does not flow proximately from the act complained of. In other words, the law always refers the injury to the proximate, not to the remote cause." *Cooley Torts* (4th ed.), § 50.

The wrongdoer is answerable for the injury that, in the ordinary and natural course of events, ensues from the wrongful act, even though it be immediately produced by an intervening cause, if such intervening cause was put in operation

by the primary wrongful act. Compare *Milwaukee and St. Paul Railroad Co.* v. *Kellogg,* 94 *U. S.* 474; 24 *L. Ed.* 259; *Scott* v. *Shepherd,* 3 *Wils.* 403. The applicable rule was applied by Mr. Justice Trenchard, speaking for our court of last resort, in *DeMott* v. *Knowlton,* 100 *N. J. L.* 296: "We dare say that few, if any, persons can foresee the precise consequences of a negligent act. The rule is that, where an act is negligent, it is not necessary to render it the proximate cause that the person committing it could or might have foreseen the particular consequences or precise form of the injury, or the particular manner in which it occurred, if by the exercise of reasonable care it might have been foreseen or anticipated that some injury might result." Here, it was open to the jury to find that, but for the concussion and consequent dizziness flowing from the original wrongful act, the fall from the window would not have occurred. See *Torts, A. L. I.,* §§ 435, 443, 460.

*Sixth:* Lastly, it is said that the trial judge erred in submitting to the jury "the question of the alleged defective construction" of the staircase, for the reason that there was no competent evidence of "a standard construction of nosings applicable to the situation in this case." The exception noted to the portion of the charge made the subject of the ground of appeal did not embody this criticism. Moreover, the ground of objection now urged is not well founded in fact.

Judgment affirmed, with costs.