## OKLAHOMA NATURAL GAS CO. v. ROSS
### (four cases).
### Nos. 2531–2534.

Circuit Court of Appeals, Tenth Circuit.
Nov. 2, 1942.

Rehearing Denied Dec. 10, 1942.

Paul Pinson, of Tulsa, Okl. (I. J. Underwood and O. L. Lupardus, both of Tulsa, Okl., on the brief), for appellant.

J. B. Moore, of Ardmore, Okl. (Gomer Smith, of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

W. E. Ross, his wife and seven minor children, lived in a four-room house in Ardmore, Oklahoma. On the early morning of December 14, 1939, the house was destroyed by fire. Some members of the

family lost their lives and others were seriously injured. Four separate actions were instituted against the Oklahoma Natural Gas Company, seeking recovery of damages. The cases were consolidated for trial. Separate verdicts were returned and separate judgments were entered in each case in favor of the plaintiffs and against the company. Separate appeals were taken from each judgment. The cases were consolidated here.

The charge against the company was that it negligently failed to shut off the gas at the meter, and also negligently permitted gas to escape around a defective joint near the meter; that as the proximate result of such negligence, gas escaped either through the meter and entered the house through the service pipes or escaped at the leak in the union and accumulated under the house and then entered the house through cracks and crevices in the floors and walls where it accumulated in sufficient quantities so that when a fire was kindled and a lamp was lit, it ignited and caused the fire with the resulting injuries.

The principal contention for the reversal of the several judgments is that they are not supported by substantial testimony. The evidence on behalf of the plaintiffs established the following facts: The house was a four-room house, set on piers. It was enclosed to the ground on three sides, but was open on the south side. The house was piped for gas. Although the Ross family was not using gas, the meter, which was located immediately adjacent to a small porch on the south side, was not disconnected, and two service or riser pipes which entered the house were left uncapped.

Early on the morning of the fire, Mrs. Ross arose and started a fire in a stove, using a small quantity of kerosene. Shortly thereafter her husband started a fire in the kitchen stove, also using a small quantity of kerosene. The fire started almost immediately. The fire at its inception was confined largely to the upper portions of the rooms. It was a quick fire. Mrs. Ross heard a roar and saw a flash and then the air took fire and roared over their heads. Neighbors living nearby had their attention attracted by a noise that sounded like a combustion; great flames were running out of windows; glass was breaking; the fire was all around the eaves; the windows looked as if they were pushed out; the roof seemed to jump up.

G. B. Curtis testified that he got to the fire before the fire department arrived and that he saw a blue flame at the meter. Three other witnesses testified that they went over shortly after the fire was put out, about the time the firemen were leaving, and heard the hissing of escaping gas about the meter and saw a meter hand moving around. Doctors testified that the burns of the injured were "flash burns" caused by gasoline, gas or coal oil. A fireman of twenty years' experience and the fire chief testified that in their opinion the fire was a gas fire. It was the opinion of a gas engineer of long experience that the gas had concentrated in the upper part of the house, became ignited, and burned in suspension. The fire chief stated that in his opinion the gas escaping about the meter would be carried back under the house; that the circumstances of the fire "spelled gas to him."

There was much evidence adduced by appellant which tended strongly to show that it was in no wise negligent and that the fire was not a gas fire. It would serve no purpose and would only encumber the record to set out this evidence in detail. All of the evidence together presented an issue for the jury. The jury resolved this issue against appellant. It is our conclusion that the verdict of the jury is not without support of substantial evidence and that the position of appellant in this respect is not well taken.

One further contention merits consideration. It is contended that the court erred in the admission of testimony. The challenged testimony is that of the three witnesses who testified that they came on the scene shortly after the fire had been extinguished and saw the hands of the meter turning and heard the hissing sound of escaping gas. It is argued that the condition of the meter was not the same then as it was at the time of the fire, because when the firemen first came they turned the stopcock. It is to be noted that no objection was lodged to the admission of this evidence; but, aside from that, it was not error to admit it.

The general rule is that evidence of a condition existing after an injury is inadmissible to establish the existence of that condition at the time of the injury. 20 Am. Juris., Evidence, § 306, states the rule as follows:

"The principle which excludes proof of collateral issues is said in many cases to

preclude a party from proving that a certain state of affairs obtained at a particular time by evidence that such condition existed at another time. Generally speaking, however, the question whether evidence of the condition of a thing or place before and after an event is relevant and admissible to prove its condition at the time of the event is, to a large extent, dependent upon the character of the thing or place and nature of the condition sought to be proved, as constant or variable, and upon the existence of any change during the intervening period, and, to some extent, upon the length of that period. The broad general rule is that where there is no change in the condition of an appliance or the premises or the scene of an accident, evidence as to the condition of such appliance or place, either before or after the event in issue, is relevant and admissible to show its condition at the time of such event, provided it relates directly to the issue in question and is not too remote in point of time."

In Midco Oil Corp. v. Hull, 182 Okl. 21, 75 P.2d 1126, 1128, the Oklahoma Supreme Court held that evidence that salt water was escaping from a lease some time after the loss of livestock was inadmissible to show that it was the cause of the loss, in the absence of a showing that salt water was escaping on or before the date on which the stock's illness began. The court states the general rule as follows:

"As a general rule, evidence of a condition existing after an injury is inadmissible to prove that such condition was the cause of the injury, *unless it is shown that there has been no change in the condition since the injury.*"

True, the evidence of the three witnesses that gas was escaping at the meter, to which objection is now made for the first time, relates to a condition a few hours after the start of the fire. But the testimony of Curtis established that the same condition existed at the approximate beginning of the fire. The testimony of Curtis meets the requirements both of the general rule and the Oklahoma rule that there must be a showing that the subsequent existing condition existed at the time of the injury. The Curtis testimony also negatives the suggestion that the manipulation of the stopcock by the firemen might have caused the defect in the connection which permitted gas to escape.

Other assignments of error are advanced, which, in the interest of brevity, are not discussed in detail. It is sufficient to say that we have considered them and find no reversible error therein.

Affirmed.