403 P.2d 305

CITY OF PHOENIX, a municipal corpora-
tion, Appellant and Cross-Appellee,

v.

Ronnie Wayne BOGGS, by his father and nat-
ural guardian, Finus E. Boggs, Appel-
lee and Cross-Appellant.*

I CA–CIV 49.

Court of Appeals of Arizona.

June 23, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7779. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Merle L. Hanson, City Atty., by James D. Lester, Asst. City Atty., for appellant and cross-appellee.

V. L. Hash, Phoenix, for appellee and cross-appellant.

CAMERON, Judge.

This is an action against the City of Phoenix brought by the guardian ad litem of a seven year old boy who sustained the loss of his left eye while playing upon a public street within the City of Phoenix, in February, 1960. Trial was held before a jury in the Superior Court of Maricopa County, and judgment rendered in favor of the plaintiff for the sum of $20,000.00. The City of Phoenix has appealed.

The facts of the case so far as is necessary to decide this appeal are briefly as follows:

On 5 February, 1960, the plaintiff, Ronnie Wayne Boggs, had been playing in and around the neighborhood of his home at 2315 Golden Lane, in the City of Phoenix, Arizona. At the time, Golden Lane was an unimproved dirt road approximately one-half mile in length, which could best be described as a country lane. It extended from Black Canyon Highway on the West, to 23rd Avenue on the East, and a full mile North of Northern Avenue. Along the North and South sides of Golden Lane were several residences, as well as open fields and citrus groves, with the plaintiff's home being located at the extreme east end of the road on the South side of the street. At the extreme west end of the roadway, there was a saddle club and horse arena in which rodeos were periodically conducted. Golden Lane was used for access and exit to and from these events. As plaintiff returned home along this route, he stumbled or tripped in a hole or depression in the road, fell forward, and punctured his left eye on a piece of wire. Although the record is unclear as to which particular piece of wire penetrated plaintiff's eye, there is ample testimony that Golden Lane was literally strewn with wire, glass, paper and other debris, so as to have given a jury sufficient insight into what actually precipitated the accident and injury. Attempts were made to suture the wound and save plaintiff's eyesight, however, infection set in, ultimately requiring surgery to remove it.

At the trial below, plaintiff sought to introduce and succeeded in introducing, certain evidence as to the condition of the roadway both immediately before and after the accident, as well as at various other times before the accident. We may surmise

that its purpose was twofold in this respect—one, to give the jury an inference as to how the accident happened and two, to show the generally dangerous condition of Golden Lane to have therefore put the defendant on notice that a dangerous condition existed. The defendant, City of Phoenix, objected to the introduction of this type of evidence, and assigned as error that only the

> "particular wire obstruction alleged to have caused the accident"

would be admissible, and that any evidence regarding the condition of the roadway at any time other than when the injury occurred would be irrelevant and immaterial. Defendant insists that evidence of any obstruction, which did not of itself contribute to or cause the injury and which it is urged was in no way related to the one which produced the injury, affords no proof and has no probative value as to the existence of the obstruction which actually caused the injury. With this we cannot agree.

In this case, it appears that other similar pieces of wire were similarly situated to the one which caused the injury and, therefore, were of very significant probative value to show how and why the accident happened, as well as tending to show that a substantial and dangerous defect or obstruction had existed on Golden Lane and that the City of Phoenix had knowledge, either actual or constructive, of that condition.

 The applicable general rule, in either setting, is well established that evidence of the existence of a particular fact before or after an act in question, or of other similar accidents at or near the place of the injury, may be shown to indicate the existence of that same condition or happening at the time of the act or accident. Montgomery Ward & Co. v. Wright, 70 Ariz. 319, 220 P.2d 225 (1950), Slow Development Company v. Coulter, 88 Ariz. 122, 353 P.2d 890 (1960). It is true that in order to admit evidence of this nature the condition shown must be the same or substantially the same as that existing at the

time of the accident, which condition it is claimed caused the accident and upon which the negligence of appellee is based, Ong v. Pacific Finance Corp. of California, 70 Ariz. 426, 222 P.2d 801 (1950); and that where the fact situation has inherent in it the likelihood of change, testimony concerning the situation which is presumed to continue, must be fairly close in its general character to the event which is presumed to continue. Montgomery Ward & Co. v. Wright, supra. But here what was presumed to continue was the dangerous condition of Golden Lane. The Supreme Court of New Jersey has had occasion to rule on this same point, and has said:

> "It is elementary that the condition of a place or thing at the time of an injury may always be evidenced by showing its condition before or after that time, provided no substantial change has occurred. The propriety of an inference in the individual case will depend on the likelihood of intervening circumstances as the true origin of the subsequent existence." Millman v. United States Mortgage & Title Guaranty Co. OF New Jersey, 121 N.J.L. 28, 1 A.2d 265 at 267 (1938).

It has also been held in the federal courts, that:

> "'* * * the question whether evidence of the condition of a thing or place before and after an event is relevant and admissible to prove its condition at the time of the event is, to a large extent, dependent upon the character of the thing or place and nature of the conditions sought to be proved, as constant or variable, and upon the existence of any change during the intervening period, and, to some extent, upon the length of that period. The broad general rule is that where there is no change in the condition of an appliance or the premises or the scene of an accident, evidence as to the condition of such appliance or place, either before or after the event in issue, is relevant and admissible to show

its condition at the time of such event, provided it relates directly to the issue in question and is not too remote in point of time.' [20 Am.Jur., Evidence, § 306]." Oklahoma Natural Gas Co. v. Ross, 10 Cir., 131 F.2d 238 at 240 (1942).

We have carefully searched the trial transcript in an attempt to determine whether or not a proper foundation was laid for the presentation of this evidence and we are satisfied that such was established. We note that every one of plaintiff's witnesses directly testified that both immediately before and after the accident the physical condition of Golden Lane remained unchanged. Where the testimony indicates, as here it did, that Golden Lane was in a general state of neglect, that it was littered with loose wire and other debris and that the plaintiff fell as a result of tripping or stumbling over *a* rut and fell onto *a* piece of wire would cause the loss of his left eye, we do not think it necessary to show either the exact rut in the street or the particular piece of wire which caused the actual injury. In our opinion, this evidence was relevant and material to the issues of what caused the accident and whether or not a negligently maintained road had existed for a sufficient time prior to the accident to constitute notice to the defendant. A jury might well have been justified in so concluding.

However, even if we assume simply for the sake of argument, that defendant is correct in its contention that the evidence introduced was inadmissible to show what actually caused the injury, we would still be disposed to affirm the lower court's decision to admit this same evidence in order to show the prior and subsequent condition of Golden Lane which should have put the City of Phoenix on notice that one of its streets was in a dangerous condition. That such is the law cannot be doubted. As was said by the Supreme Court of Arizona, again in the Montgomery Ward case, supra, 70 Ariz. at 321, 220 P.2d at 226:

"It is a well-established rule of evidence that although evidence is incompetent for one purpose it is entirely proper for another purpose."

Certainly plaintiff should be allowed to produce witnesses, as he did, in order to offer direct testimony as to the condition of Golden Lane while that roadway was a part of the Phoenix street system. As was said in Slow Development Company v. Coulter, supra, 88 Ariz. at page 125, 353 P.2d at page 892:

"Such evidence is admissible, after a proper foundation has been laid, as tending to prove the existence of a defective or dangerous condition, knowledge or notice of the dangerous condition or negligence in permitting that condition to continue."

Thus, even if evidence of other wire, debris and/or depressions along Golden Lane were inadmissible to show what particular piece of wire actually punctured the plaintiff's eye, nevertheless, it would still be admissible to show why the City of Phoenix was on notice that a dangerous street condition existed.

The trial judge is invested with considerable discretion in determining the relevancy and admissibility of evidence, Higgins v. Arizona Savings and Loan Association, 90 Ariz. 55, 365 P.2d 476 (1961), and when testimony properly goes to any issue of a case, even though it may indirectly affect another issue, or where there are sufficient facts upon which a jury may arrive at a verdict justifiable under some theory of law, we will not disturb the judgment without a showing that there has been an abuse thereof. Poineer Constructors v. Symes, 77 Ariz. 107, 267 P.2d 740, 41 A.L. R.2d 668 (1954), Throop v. F. E. Young And Company, 94 Ariz. 146, 382 P.2d 560 (1963). We find no abuse.

Defendants next assignment of error, states that as a matter of law, the plaintiff failed to prove that the alleged substantial and dangerous obstruction was a proximate cause of the accident. Again,

we cannot agree. The testimony was ample to support a jury finding that the plaintiff had lost his eye by virtue of tripping or stumbling in a depression and onto a piece of wire, and that the particular depression and the particular piece of wire which caused the injury was part of a general condition of the roadway about which complaint is made.

As to whether plaintiff's counsel was guilty of prejudicial misconduct in his closing arguments to the jury, as defendants contend, our first inquiry must be into what was the alleged misconduct. During plaintiff's closing argument to the jury, the following remarks were made:

> "We are now reaching the close of this case and the mutilated body of this child and the relief that he is asking for is now in your hands. It will be no longer in my hands. It will be no longer in the court's hands. When he hands you the case, that is, but it will be solely for you to say whether or not this child should go through life handicapped—, handicapped as you yourself would not want one of your children. Whether or not you are going to re-[d]ress that injury and feel as you should feel about some of your own children, or whether or not you are going to say, 'Well, he's just another child, let it go'."

Defendant contends that in arguing a case before a jury, it is improper for counsel to appeal to the jury to put themselves in the shoes of the plaintiff in reaching a verdict.

 Whereas we feel that such might be within the category of self-imposition, we cannot agree that it was prejudicial misconduct in this case. A great deal of latitude should be given trial counsel in arguing his case before the jury, and where the record does not establish that remarks to the jury by the attorney for plaintiff caused it to return a verdict which was the result of passion and prejudice, we will not interfere. Morenci Southern Ry. Co. v. Monsour, 24 Ariz. 49, 206 P. 589 (1922), Builder's Supply Corporation v. Shipley, 86 Ariz. 153, 341 P.2d 940 (1959).

Indeed, many cases have recognized that counsel's argument urging a jury to put themselves in the position of a litigant, or to allow a recovery that they would wish if in the same position, affords no relief to defendants on the grounds of prejudice. See 70 A.L.R.2d 945, and many cases cited therein.

In our opinion, the evidence was sufficient to support the verdict and judgment.

Judgment affirmed.

STEVENS, C. J., and DONOFRIO, J., concurring.