John MILESKI, an infant over the age of 14 years, by his parent and natural guardian, Edward Francis Mileski, Plaintiffs-Appellees,

v.

The LONG ISLAND RAIL ROAD COM-PANY, Defendant-Appellant.

No. 977, Docket 73-2751.

United States Court of Appeals, Second Circuit.

Argued May 8, 1974.

Decided June 3, 1974.

As Amended Sept. 3, 1974.

Arnold P. Messing, New York City
(George M. Onken, Jamaica, N. Y., Alexander R. Sussman, Cravath, Swaine &
Moore, New York City, of counsel), for
defendant-appellant.

Peter M. J. Reilly, New York City
(Edward G. Dougherty, Nicholas T. Diakow, New York City, of counsel), for
plaintiffs-appellees.

Before ANDERSON, FEINBERG and
MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Appellant, an 18-year old trackman
employed by the Long Island Rail Road
("Railroad" herein), brought suit
against it under the Federal Employers'
Liability Act, 45 U.S.C. § 51 et seq.
("FELA" herein) for damages for injuries sustained when a fellow worker engaged in driving railroad spikes struck a
rail, causing a piece of steel to fly off
and to pierce appellee's left eye with the
result that he suffered great pain, a

permanent loss of vision in his left eye and was hospitalized for a long period. The Railroad appeals from a judgment against it based on a jury verdict awarding $250,000 damages, claiming (1) that there was insufficient evidence of negligence to support a finding of liability, (2) that the district court erred in admitting evidence of related pain in plaintiff's right eye, which had not been alleged or claimed before trial, (3) that it was an abuse of discretion on the part of the court not to order a new trial because of prejudicial improprieties on the part of plaintiff's counsel in his summation, and (4) that the amount of the award was excessive. We affirm.

■ Construing the proof most favorably to the plaintiff, there was sufficient evidence to support a finding that negligence on the part of the Railroad had played a role in causing plaintiff's injury, which is the test. See Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Kuberski v. New York Central Railroad Co., 359 F.2d 90, 93 (2d Cir. 1966), cert. denied, 386 U.S. 1036, 87 S.Ct. 1475, 18 L.Ed.2d 600 (1967); Eaton v. Long Island Railroad Co., 398 F.2d 738 (2d Cir. 1968). For example there was proof that, although the Railroad's rules specified that safety goggles be worn by employees located in the vicinity of activities such as spiking, Railroad supervisors had relaxed enforcement of the rule, permitting employees to dispense with wearing glasses and failing to replace the safety glasses of Mileski and others after they had broken. The jury could reasonably have inferred that if the safety glasses had been replaced and the rule enforced the accident would not have happened.

Although injury to plaintiff's right eye was not expressly claimed, the Railroad was alerted to the possibility of "sympathetic ophthalmia" by the express reference to it in the report of the treating physician, Dr. Paul Todtfeld, dated December 6, 1972, attached to plaintiff's answers to defendant's interrogatories dated May 19, 1973, which had been furnished to defendant more than five months before trial. Furthermore, Judge Weinstein pointed out that "the left eye is interconnected with the right eye through the nervous system in the brain and therefore, . . . an injury to the left eye alone has a symptomatic effect on the right eye . . . even a layman like me knows this."

■ Assuming that defense counsel was in fact surprised by the introduction of evidence with respect to the right eye, the trial judge on October 4, 1973, offered the Railroad a continuance which was refused. The trial continued thereafter until October 9, 1973, at which time the court, in denying the Railroad's motion to set aside the verdict, pointed out that "it had been in no hurry to complete this case," that it had been prepared to grant a continuance "with respect to the right eye damages," and that a continuance would have been granted with respect to the mental anguish aspects "had it been requested." Having rejected this clear opportunity to obtain and present rebuttal medical proof, defendant cannot now complain of any prejudice.

■■ We also fail to find any substantial support for the Railroad's contention that the summation of plaintiff's counsel so exceeded the bounds of propriety that a new trial was mandated. Improper or intemperate argument by counsel in summation may necessitate a new trial where it tends to arouse undue passion or prejudice on the part of the jury, thereby depriving the opposite party of a fair trial. See Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin, 283 U.S. 520, 51 S.Ct. 501, 75 L. Ed. 1243 (1931); New York Central Railroad Co. v. Johnson, 279 U.S. 310, 49 S.Ct. 300, 73 L.Ed. 706 (1929); Koufakis v. Carvel, 425 F.2d 892, 900–905 (2d Cir. 1970); San Antonio v. Timko, 368 F.2d 983, 986 (2d Cir. 1966); Klotz v. Sears, Roebuck & Co., 267 F.2d 53 (7th Cir.), cert. denied, 361 U.S. 877, 80 S.Ct. 141, 4 L.Ed.2d 114 (1959); Brown v. Walter, 62 F.2d 798 (2d Cir. 1933). However, in the present case the references

**1172**

by Mileski's counsel to the possibility of injury to Mileski's right eye and to the mental strain that might be suffered as a result of his being limited in the future to reliance upon one eye fell far short of overstepping the bounds of propriety, since they had some evidentiary support in the record.

■ The references by plaintiff's counsel in his summation to specific amounts of money which in his opinion, the jury should award for pain and suffering fall in a somewhat different category. The problem posed by such statements stems from the unavoidably vague measure of damages which the jury is instructed to apply, i. e., fair and reasonable compensation, to the extent that injuries, pain and suffering can be translated into dollars. A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel, particularly if he conveys the impression (as frequently happens) that he speaks on the basis of extensive trial experience. Without benefit of any counter-figures from other sources—defense counsel contesting liability rarely risks being drawn into a discussion of damages, since to do so might weaken his claim of any liability—the jury has before it only one set of extravagantly high figures, which it may be tempted to treat as evidence rather than as mere argument. That the present case was no exception is demonstrated by the following excerpts from the summation of Mileski's counsel on the subject of damages:

"When I started this lawsuit and I drew the complaint, and I saw this boy for the first time. I was struck by his appearance not only the fact that he had this terrible injury—and this is a loss of a member, a leg, an arm, an eye, a member, to my way of thinking, this is my opinion, one of the most important things that you have in your body, if not the most important, the one that I put more value and store on than anything else, the eye.

"I brought an addendum [sic] clause in excess of $1 million. When I say, 'in excess,' I mean just that. . . . I don't think I was wrong on that day that I drew that complaint.

\* \* \* \* \* \*

"Let me say, and just let me put that in, one segment. I say for that moment on the bridge [the accident occurred on a railroad bridge] and the pain and suffering, for that period of time of approximately one moment, when the pain was intense, when the depression was worse than it was ever before, and hopefully never again as bad, $150,000 for that time period, $150,000 for what he went through mentally, physically.

\* \* \* \* \* \*

"For his life expectancy, for the loss of the eye, would you say $15 a day for fifty years would sound too much? It doesn't sound like anything at all, does it? It isn't much at all when you think 'Now, I'll be around like this (indicating) for the rest of my life.' $15 a day, and if you compute that for fifty years, it amounts to $5,475 a year, and a total of $284,700 for the loss of an eye.

\* \* \* \* \* \*

"But the fact that his eyes are strained and he has problems with light accommodation, this is an added burden that this young man has to carry for all the fifty projected years.

"I say $100,000 for that. For fifty years, and if you bring it down to days and hours and minutes, it represents pennies per hours and minutes. I feel he is entitled to that.

"Now, even worse than all the others, this occult fixation that the doctor testified to, worry, the depression he feels and will feel every day of his life.

\* \* \* \* \* \*

"I say that's worth a minimum of $200,000.

\* \* \* \* \* \*

"His lovely little wife told how he, when anybody comes to his home, he

runs for his glasses if he's not wearing them at that time. You have seen it with people who have some problems with their eyes. There's a consciousness of it. They're ill at ease. . . . There can be no thought about him not trying to do what's right in relationship to himself and his family. $75,000? Could you think that would be—and divide that into fifty years and bring it down to days, minutes and hours. It's not much at all. It's pennies. It's dollars.

\*  \*  \*  \*  \*  \*

"The doctor talked about the problem that there is always some sort of condition in the left eye. That there will always be pain. I can read certain of these things to you. Before I sit down I'm just going to read a few of these things.

"Another $100,000? I added that up. . . . It adds up to $915,040.

\*  \*  \*  \*  \*  \*

"Will he be able to make a living in this fifty years stretching along that long tough road that life consists of. This is all that he has, with the worries that he has. So, you can fix a sum of money for that. Add to it $900,000. Add to it what I have mentioned."

The effectiveness of the foregoing comments is attested to by the jury's return of a $250,000 verdict. Applying the standard laid down in Dagnello v. Long Island Railroad Co., 289 F.2d 797 (2d Cir. 1961), see Grunenthal v. Long Island Railroad Co., 393 U.S. 156, 159, 89 S.Ct. 331, 333, 21 L. Ed.2d 309 (1968), we cannot say that this award was so grossly excessive or shocking to the conscience that it would be a "denial of justice to permit it to stand." On the other hand, the award represents what appears to be an all-time monetary high for loss of an eye and is considerably in excess of other awards rendered during recent years for substantially the same injuries.[1]

With a view to avoiding excessiveness that might arise from undue weight being given to counsel's opinion, some jurisdictions have prohibited counsel in summation from giving any opinion as to the dollar amount which the jury should award for pain and suffering,[2] from suggesting formulas such as per diem or unit-of-time dollar amount which, when multiplied by the estimated period of suffering, might produce an unreasonably high lump sum,[3] or from mentioning the *ad dam-*

---

1. See, e. g., Rapisardi v. United Fruit Company, 441 F.2d 1308 (2d Cir. 1971), remanding for further determination of all issues relative to damages, 300 F.Supp. 942 (S.D. N.Y.1969) ($110,403) ; Filler v. Rayex Corp., 435 F.2d 336 (7th Cir. 1970) ($101,000) ; Raman v. Carborundum Co., 31 App.Div.2d 552, 295 N.Y.S.2d 534 (2d Dept. 1968) ($50,000) ; Hogenson v. Service Armament Co., 77 Wash.2d 209, 461 P.2d 311 (1969) ($130,000) ; Rill v. Chiarella, 50 Misc.2d 105, 269 N.Y.S.2d 736 (Sup.Ct. 1966), modified, 30 App.Div.2d 852, 293 N. Y.S.2d 1 (2d Dept. 1968), affd., 25 N.Y.2d 702, 306 N.Y.S.2d 955, 255 N.E.2d 183 (1969) ($75,000) ; Baynes v. City of New York, 23 App.Div.2d 756, 258 N.Y.S.2d 473 (2d Dept. 1965) ($70,000) ; Ferguson v. Erie Railroad Co., 235 F.Supp. 72 (S.D.N. Y.1964) ($35,000) ; Burnett v. Caho, 7 Ill. App.3d 266, 285 N.E.2d 619 (3d Dist.1972) ($50,000) ; Holten v. Amsden, 161 N.W.2d 478 (N.D.1968) (-27,000) ; Larrabee v.

United States, 254 F.Supp. 613 (S.D.Cal. 1966) ($100,000) ; Dallas v. Granite City Steel Co., 64 Ill.App.2d 409, 211 N.E.2d 907 (5th Dist. 1965) ($115,000) ; City of Phoenix v. Boggs, 1 Ariz.App. 370, 403 P.2d 305 (1965) ($20,000).

2. See, e. g., Botta v. Brunner, 26 N.J. 82, 138 A.2d 713 (1958) ; Stassun v. Chapin, 324 Pa. 125, 188 A. 111 (1936) ; Affett v. Milwaukee & Suburban Transp. Corp., 11 Wis.2d 604, 106 N.W.2d 274 (1960) ; Goldstein v. Fendelman, 336 S.W.2d 661 (Mo. 1960). See contra: Haycock v. Christie, 101 U.S.App.D.C. 409, 249 F.2d 501 (1957) ; McLaney v. Turner, 267 Ala. 588, 104 So.2d 315 (1958) ; Seffert v. Los Angeles Transit Lines, 364 P.2d 337, 15 Cal.Rptr. 161 (1961) ; Kindler v. Edwards, 126 Ind.App. 261, 130 N.E.2d 491 (1955) ; Haley v. Hockey, 199 Misc. 512, 103 N.Y.S.2d 717 (1950).

3. See, e. g., Botta v. Brunner, supra, and decisions cited in Johnson v. Colglazier, 348

*num* figure sought in the complaint.[4] We have been unwilling to adopt such a drastic measure as a flat prohibition, preferring a more flexible approach that would leave the matter largely to the trial judge's discretion. See, e. g., Rush v. Cargo Ships & Tankers, Inc., 360 F.2d 766 (2nd Cir. 1966). Since the trial judge is usually better able on the basis of his acquaintanceship with the evidence in each case to guage the potentiality for abuse and to determine whether such references by counsel may have an unduly prejudicial effect upon the jury, he should remain free in his discretion either to prohibit trial counsel from giving the jury any opinion as to specific amounts that might be awarded for pain and suffering or to impose such reasonable limitations as he may prescribe. In the latter event, however, the court should certainly not limit itself to the frequently used "boiler-plate" type of charge to the effect that "arguments of counsel are not evidence" but should, either *sua sponte* or upon request, specifically caution the jury that the dollar figures advanced by counsel do not constitute evidence but merely represent argument which the jury is free to disregard in its deliberations. See, e. g., Philadelphia & R. Ry. Co. v. Skerman, 247 F. 269 (2d Cir. 1917); Smith v. Philadelphia Transp. Co., 173 F.2d 721, 726 (3d Cir. 1949). Since no objection was made in the present case to the opinions and suggestions expressed by plaintiff's counsel to the jury with respect to the lump sums that might be awarded and since no request was made for instructions along the foregoing lines, the award must stand.[4a] Counsel's summation was not so outrageous, or the trial judge's failure to caution the jury with respect to it so fundamental an error, as to mandate reversal. See, e. g., New York Central Railroad Co. v. Johnson, 279 U.S. 310, 318–319, 49 S.Ct. 300, 73 L.Ed. 706 (1929); San Antonio v. Timko, 368 F.2d 983, 986 (2d Cir. 1966).[5] However, we think that in the future the district court would be well advised to give such an instruction *sua sponte* where it is not requested by counsel.

The judgment of the district court is affirmed.

---

F.2d 420, 428 n. 7 (5th Cir. 1965) (Brown, J. dissenting); Henne v. Balick, 51 Del. 369, 146 A.2d 394 (1958); King v. Railway Express Agency Inc., 107 N.W.2d 509 (N.D. 1961); Harper v. Bolton, 123 S.E.2d 54 (S. C.1962); Certified TV & Appliance Co. v. Harrington, 201 Va. 109, 109 S.E.2d 126 (1959). See contra: Yates v. Wenk, 363 Mich. 311, 109 N.W.2d 828 (1961); Four-County Elec. Power Ass'n v. Clardy, 221 Miss. 403, 73 So.2d 144 (1954); Johnson v. Brown, 75 Nev. 437, 345 P.2d 754 (1959); Olsen v. Preferred Risk Mut. Ins. Co., 11 Utah 2d 23, 354 P.2d 575 (1960) Jones v. Hogan, 56 Wash.2d 23, 351 P.2d 153 (1960).

4. See, e. g., Cooley v. Crispino, 21 Conn.Sup. 150, 147 A.2d 497 (1958). See contra: Kinnear v. General Mills Inc., 308 Mass. 344, 32 N.E.2d 263 (1941); Sanders v. Boston & Me. R.R., 77 N.H. 381, 92 A. 546 (1914).

4a. On this appeal defendant was represented not by his trial counsel but by different counsel.

5. The Railroad here seeks to excuse its counsel's failure to object to certain allegedly inflammatory portions of plaintiff's summation on the ground that a protest would "only serve to emphasize the evil," citing Brown v. Walter, 62 F.2d 798 (2d Cir. 1933). However, unlike the situation in *Brown*, a prompt objection here to counsel's first mention of the subject or, better still, a request out of the jury's presence for an advance ruling by the court, would have avoided any such prejudice. A ruling in defendant's favor upon such a request would have eliminated most, if not all, of the remarks claimed to have been prejudicial. If the court permitted the comments it might have restricted their impact by instructing the jury that they amounted merely to argument, which the jury might disregard, and that they did not constitute evidence in the case.