652 P.2d 548

Sharon GRANT, personal representative of the estate of Koy Grant, deceased; Sharon Grant individually and on behalf of Jason Grant and Jared Grant, minors, Plaintiffs-Appellees,

v.

ARIZONA PUBLIC SERVICE COMPA-NY, an Arizona corporation, Defendant-Appellant.

No. 1 CA–CIV 4815.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 6, 1981.

Charles M. Brewer, Ltd. by Charles M. Brewer, Stuart J. Reilly, Phoenix, for plaintiffs-appellees.

Snell & Wilmer by George H. Lyons, Loren W. Counce, Jr., Phoenix, for defendant-appellant.

## OPINION

OGG, Judge.

This is a wrongful death action arising out of an accident which occurred when Koy Grant was electrocuted while working for Kensington West-Mayo Construction Company at a City of Phoenix storm sewer construction site. Death was caused when a fellow employee inadvertently pulled a tag line from a crane into contact with a high voltage line of the appellant/defendant, Arizona Public Service Company (APS). Koy Grant was killed when the electric current ran down the crane's cable to where Grant was working in contact with the cable at the bottom of the excavation site.

Appellee/plaintiff, Sharon Grant, the surviving spouse, on behalf of herself and her two sons, filed a complaint against APS. The case was tried to a jury and the court entered judgment on the verdict in the amount of $1,000,000 in favor of Sharon Grant and $250,000 to each of her two sons.

The motions of APS for a directed verdict and for a new trial were denied, and APS filed this appeal.

APS submits the following issues for review:

(1) Whether it was reversible error to deny APS' motion for a directed verdict.

(2) Whether it was reversible error to give certain instructions and to refuse to give a contributory negligence instruction and others.

(3) Whether reversible error was committed in the admission and rejection of evidence.

(4) Whether pervasive misconduct of plaintiff's counsel deprived defendant of a fair trial.

(5) Whether, under the circumstances of this case, the failure to require plaintiff to identify her exhibits in advance of trial was error.

■ We find the cumulative error was sufficient to deny APS a fair trial and we reverse and remand for a new trial.

## APS' MOTION FOR A DIRECTED VERDICT

APS contends that its motion for summary judgment made before trial and motions for directed verdicts made at the close of the plaintiff's case and at the close of all testimony should have been granted. APS argues that where it was given no notice that the crane would be set up at the accident location, it had no duty to de-energize the lines. APS presents a further argument that the proximate cause of the accident was the action of the contractor and the crane crew when all were aware of the dangers of the energized line but nevertheless moved the crane into close proximity to the line without any protective steps.

In this appellate review, we must view the evidence and the inferences to be drawn therefrom in the light most favorable to sustaining the jury verdict and judgment of

the trial court. *Lane Title and Trust Co. v. Brannan,* 103 Ariz. 272, 440 P.2d 105 (1968).

■ This court, in the recent, similar case of *Mason v. Arizona Public Service Co.,* 127 Ariz. 546, 622 P.2d 493 (App.1980), set out the duty of a distributor of electric power as follows:

A distributor of electric power must take precautions commensurate with the dangers involved whenever it is to be reasonably anticipated that persons may come into contact with its lines. . . . A warning alone may not be sufficient. (Citations omitted)

127 Ariz. at 551–52, 622 P.2d at 498–99.

In the case of *Arizona Public Service v. Brittain,* 107 Ariz. 278, 486 P.2d 176 (1971), the Arizona Supreme Court held that the duty of a distributor of electric power is established by the foreseeability of harm.

■ Applying these legal principles to the facts, we find no error in the trial court's refusal to grant the APS motions for summary judgment and for a directed verdict. The extensive exhibits and volumes of testimony produced by Grant in presenting plaintiff's case furnished an adequate foundational basis for the testimony of Dr. Robert Nabours, industrial engineer. This foundational testimony together with the testimony of this expert witness was sufficient to warrant the submission of this case to the jury. Dr. Nabours testified that in his expert opinion, APS knew of the hazard and did not fulfill its duty to protect against it. He specifically stated that: "It is my opinion that the handling of the difficulty with regard to the construction at 15th Avenue and Watkins was not responsive to a safe and reasonable approach to the satisfaction of the public utility in regard to de-energizing or rubbering-up or rerouting its lines in order to reduce the hazard."

## INSTRUCTIONS ISSUE

■ APS alleges error in the giving or failure to give numerous instructions. Jury instructions will not be considered "piecemeal" on appeal but must be considered as a whole, the test being whether, upon the whole jury charge, the jury was given proper rules of law to reach a correct decision. *Arizona Public Service Company v. Brittain, supra.* Viewing the instructions as a whole, we find error.

It appears the instructions submitted by both parties to the trial court were somewhat slanted as is often the case in hotly-contested negligence actions. We will not attempt to go through all the instructions but will concentrate our analysis on two important instruction issues.

Initially we examine the instruction on the basic duty of APS in this case. This instruction, given over the objection of APS, is from the court's instruction sheet 18 and reads as follows:

Arizona Public Service Company in the distribution of high voltage electrical current by means of uninsulated lines suspended above the public streets of the City of Phoenix where the public and others in performance of their work have the right to and may reasonably be expected to go, is under a duty to safeguard the public against injury arising from its operations to the extent of requiring reasonable care to correct or remove the cause of danger if reasonably foreseeable and known to the company.

A power company must anticipate and guard against events which may reasonably be expected to occur.

A power company must exercise reasonable care for the protection of the lives of others, and to do that which would give reasonable promise of preserving life regardless of the difficulty or expense. In the observance of such duties the degree of care increases as the danger increases.

■ While this instruction has some correct statements of law, it is misleading. That portion of the instruction, "where the public and others in the performance of their work have the right to and may reasonably be expected to go" is not an accurate statement of the law as applied to the facts. The public and others normally have no right to be 35 feet above the ground in

close proximity to energized APS power lines without prior notice to APS. The comment in the instruction that a power company must "do that which would give reasonable promise of preserving life *regardless of the difficulty or expense*" (emphasis added), has no basis in Arizona law and was prejudicial to APS. A power company is not an insurer against accidents or injuries resulting from contact with its transmission wires. *Salt River Valley Water Users Association v. Compton,* 39 Ariz. 491, 8 P.2d 249 (1932).

In the retrial of this case, the general duty as set forth in the cases of *Arizona Public Service v. Brittain, supra,* and *Mason v. Arizona Public Service, supra,* would be more appropriate guidelines in formulating a basic duty instruction.

The second instruction issue we will discuss is the failure of the court to give the APS proposed RAJI instructions designated as Defendant's Instructions 4, 6, 7 and 14, all dealing with contributory negligence. The trial court did instruct on assumption of risk but refused to instruct on the doctrine of contributory negligence.

Grant argues there is no evidence of contributory negligence, and further, that APS' defense theory was adequately presented to the jury by the instructions given on assumption of risk.

APS argues that under the Arizona Constitution, art. 18, § 5, the court erred in not presenting such an issue to the jury. Article 18 § 5 reads: "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." If there is any basis for a finding of contributory negligence, such issue must go to the jury. *Scott v. Scott,* 75 Ariz. 116, 252 P.2d 571 (1953). Where there is no basis in the evidence on the issue of contributory negligence, the issue should not be submitted to the jury. *Humphrey v. Atchison, Topeka and Santa Fe Ry.,* 50 Ariz. 167, 70 P.2d 319 (1937); *Pinewood Dev. Co. v. Truman,* 20 Ariz.App. 544, 514 P.2d 497 (1973).

Initially, we note that although the defenses of contributory negligence and assumption of risk frequently overlap, such defenses are not synonymous or mutually exclusive, but are rather independent, separate and distinct defenses. The distinction between the two defenses is that the assumption of risk defense rests upon the voluntary consent of the plaintiff to encounter the risk and take his chances, while contributory negligence rests upon his failure to exercise the care of a reasonable, prudent man. Where the plaintiff voluntarily consents to an unreasonable risk, both defenses may be available to the defendant. *See* Restatement, Second, Torts § 496A, comment d. It is clear that the distinction embodied in the Restatement between such defenses has been recognized by the Arizona appellate courts. *McGriff v. McGriff,* 114 Ariz. 323, 560 P.2d 1230 (1977); *Hildebrand v. Minyard,* 16 Ariz.App. 583, 494 P.2d 1328 (1972).

From our review of the transcripts, we find it was error for the court to refuse to instruct on contributory negligence. The record is clear that the deceased and all members of the crane crew were aware of the extreme danger in operating a crane pile-driving operation in close proximity to the power line. The decedent voluntarily engaged in work activities when the crane was in close proximity to the energized line, and knew that such work involved direct contact with metal sheets being lifted by the crane. There was no evidence presented that the decedent or the crew used adequate safety precautions; that the decedent ever suggested that the work cease until safer conditions were furnished; or that he refrained from contact with the metal structure during the time the crane apparatus was moving near the energized line. There was sufficient evidence to go to the jury that decedent did not act as a reasonable, prudent man, and the issue of contributory negligence should have been presented to the jury.

## ADMISSION AND REJECTION OF EVIDENCE ISSUE

APS contends that it was error to admit Plaintiff's Exhibit 22 into evidence over the

defendant's objection. Exhibit 22 is a letter from APS employee Fred Lindy to a fellow employee, Dennis O'Reilly, containing a summary of incidents wherein contact had been made with the company's power lines. APS now argues that the exhibit was irrelevant because there was no evidence about how or where the incidents occurred. APS alleges the report included contacts with electrical lines above and below ground by rods, poles, pipes, crane or high-rise equipment, antennas, airplanes and other miscellaneous contacts under a variety of unexplained circumstances. APS contends there was never a proper foundation laid to show these 124 incidents occurred under similar circumstances or that they involved cranes, accidents or acts of negligence. *See Slow Development Company v. Coulter,* 88 Ariz. 122, 353 P.2d 890 (1960). APS further complains that the error in admitting Exhibit 22 was compounded by repeated reference to 124 "accidents" or "acts of negligence" by plaintiff's counsel.

■ Although there appears to be merit in the argument now made on appeal, the only objection made at trial to the admission of Exhibit 22 was: "I object, Your Honor, irrelevant." There was no objection made pointing out what specific incidents were not relevant. It is clear that some of the similar crane-wire contacts were relevant to establish the knowledge of APS to the dangers involved in this case, and such evidence was therefore admissible on the issue of foreseeability. *Slow Development Company v. Coulter, supra.*

■ A trial court has broad discretion in determining the relevancy and admissibility of evidence. *City of Phoenix v. Boggs,* 1 Ariz.App. 370, 403 P.2d 305 (1965). Error on appeal cannot be predicated except on grounds urged in the objection. *Pioneer Constructors v. Symes,* 77 Ariz. 107, 267 P.2d 740 (1954), and if error is not raised below, it cannot be raised on appeal. *Cooper v. Holder,* 24 Ariz. 415, 210 P. 690 (1922). We find no reversible error in this issue.

Although we find no error in the admission of Exhibit 22, we do find error in the manner in which plaintiff's counsel used the contents of the exhibit in argument to the jury. This matter will be discussed later under the misconduct of counsel issue.

APS next argues that it was error and highly prejudicial for the trial court to admit Plaintiff's Exhibit 119 into evidence. Exhibit 119 was the financial statements of APS showing the substantial assets and wealth of APS. APS contends there was no evidence of willful and wanton misconduct that would justify the imposition of punitive damages.

Appellee Grant argues that where willful and wanton conduct is shown, the defendant's financial condition then becomes relevant on the issue of punitive damages. Grant contends there was sufficient evidence to submit such an issue to the jury and in any event, such issue is moot because the jury did not award any punitive damages.

■ In general, the purpose of punitive damages is to punish a wrongdoer. The wealth or financial status of the wrongdoer therefore becomes relevant to enable the jury to impose a proper punishment. *Nielson v. Flashberg,* 101 Ariz. 335, 419 P.2d 514 (1966). To determine wanton negligence, the acts of a defendant must be considered as a whole, and although each of several acts standing alone might not exceed the bounds of ordinary negligence, such acts when taken together may establish wanton negligence. Where the evidence discloses several acts of negligence, it is a matter for the jury to determine whether gross or wanton negligence has been established. *Southern Pacific Transportation Company v. Lueck,* 111 Ariz. 560, 535 P.2d 599 (1975). It is not necessary that wanton negligence be established conclusively but evidence on such issue must be more than slight and may not border on conjecture. *De Elena v. Southern Pacific Company,* 121 Ariz. 563, 592 P.2d 759 (1979).

■ In applying these legal concepts to the facts, we find this to be a close question. There was evidence that APS was aware of a dangerous situation and that

APS failed to adequately monitor the work and take proper precautions to prevent the contact with energized wire at the construction site. We cannot say the trial judge erred in submitting the issue of wanton negligence to the jury.

## MISCONDUCT OF COUNSEL ISSUE

During this three week trial, there were repeated motions for a mistrial based upon the misconduct of plaintiff's counsel, Charles M. Brewer, and there are eighty-nine separate assignments of misconduct alleged during the closing arguments of plaintiff's counsel. For the purposes of this appeal, we will concentrate upon what we consider to be the most important and flagrant assignments of misconduct that occurred in the closing arguments of plaintiff's counsel.

 Initially, appellee Grant argues that most of the alleged instances of misconduct should not be reviewed because APS waived such conduct by a failure to make a timely objection. Where counsel does not make a timely objection or ask for a mistrial until after the verdict is rendered, counsel has been deemed to have waived any objection as to misconduct of counsel in closing arguments. *Collins v. Dilcher,* 104 Ariz. 221, 450 P.2d 679 (1969); *Bruno v. San Xavier Rock & Sand Co.,* 76 Ariz. 250, 263 P.2d 308 (1953).

 Our review of the record discloses that APS properly preserved a record on this issue. Near the beginning of plaintiff counsel's closing argument to the jury, he inferred that this accident was only one of a family of 124 accidents. At that point, counsel for APS objected as follows:

> Excuse me, Your Honor. That is improper. There is nothing in the record to indicate in 1969 or concerning anything other than—
>
> THE COURT: Overruled. There will be no further interruptions during closing argument. The rules prohibit it.[1]

From that point on, counsel for APS understandably sat silent rather than antagonize the court and jury. Immediately at the close of plaintiff counsel's oral argument, counsel for APS moved for a mistrial, citing numerous specific instances of misconduct now raised on appeal. Under such facts, we find no waiver.

 In reviewing such allegations of misconduct, reversals are sparingly granted, based upon improper argument to the jury. Counsel may not only argue the facts presented by the evidence, but also any reasonable inferences to be drawn from such facts. *Pelayo v. Bell,* 13 Ariz.App. 418, 477 P.2d 537 (1971). Courts of Arizona allow wide latitude to counsel in arguing their case to the jury. *City of Phoenix v. Boggs,* 1 Ariz.App. 370, 403 P.2d 305 (1965).

On the other hand, the introduction of evidence or the pursuit of a line of argument which has no bearing on the alleged wrong but which serves only to prejudice the jury, has been held to be grounds for reversal. *Elledge v. Brand,* 102 Ariz. 338, 429·P.2d 450 (1967). The court in *Elledge* stated: "... we find it is imperative that the defense be offered an opportunity for a trial free from the admission of irrelevant and highly prejudicial evidence, improper questions and remarks." 102 Ariz. at 340, 429 P.2d at 452. *See also Sanchez v. Stremel,* 95 Ariz. 392, 391 P.2d 557 (1964).

Applying these principles of law, we will now proceed to examine some of the specific instances of alleged misconduct.

There was evidence presented in trial indicating that during a certain time period, there had been 124 prior incidents of all kinds where contacts had occurred with energized power lines. These incidents ranged from contact with electric lines by antennas to airplanes and some contacts of an unexplained nature. Some of the contacts resulted in injury and some involved fatalities. There was no showing that all of such contacts were similar, were in fact "accidents", or were caused by the negligence of APS. Yet plaintiff's counsel re-

---

1. Rule 51(d), Arizona Rules of Civil Procedure, reads: "Interruption of counsel in argument will not be permitted, except for the purpose of raising a question of law."

peatedly emphasized such matters and referred to such incidents as: "... a hundred twenty-four accidents, I imagine 140 now ..."; "And the reason I'm going to 1969 with these figures and forward was because of these contacts, contacts, acts of negligence"; "I want you to straighten these people out once and for all so they don't have number 125"; "A hundred twenty-four deaths"; "But I want to penalize them and stop them from doing this so there won't be 125 or 126." We find nothing in the evidence or reasonable inferences to be drawn therefrom that would justify such statements.

■ The record is also replete with instances where counsel for the plaintiff expressed personal opinions with no evidence of such matters in the record. As an example of this type of misconduct, plaintiff's counsel, while referring to the widow Sharon Grant, commented: "This woman has never had a date, never going to get married." Such a comment is highly prejudicial in such a wrongful death action where a defendant is prohibited from delving into any prospects for a remarriage. Another such example is the following statement: "These are the people with the billion dollars. But they said it ain't dangerous do it." (emphasis added). There is nothing in the evidence to justify the underlined portion of such a statement, and it is in fact a misstatement of the evidence.

In assessing the total impact of such misconduct together with the other error set forth in this opinion, we find that the defendant APS was denied a fair trial.

### FAILURE TO TIMELY IDENTIFY EXHIBITS ISSUE

As to the final issue, APS argues that it was denied a fair trial because plaintiff was not required to comply with the rules of procedure and identify all trial exhibits prior to trial.

At this point in time, all parties are now familiar with the exhibits, and this issue

should not arise again in retrial. We therefore will not lengthen this opinion by further discussion of this issue.

Reversed and remanded.

ROBERT J. CORCORAN, Judge, concurs. NOTE: The Honorable ROBERT J. CORCORAN was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.

HAIRE, Judge, specially concurring:

I wholeheartedly concur in the majority's decision that the judgment entered in the trial court must be reversed and the matter remanded for a new trial. I further concur in the majority's resolution of all issues except that involving punitive damages.

In my opinion the evidence presented concerning any negligence of Arizona Public Service (APS) which could have been considered as a proximate cause of the decedent's death was barely sufficient to warrant submission to the jury. It is inconceivable to me that, based upon the evidence presented, reasonable jurors could characterize APS' conduct as wanton or willful so as to justify an award of punitive damages.[2] Likewise, I cannot believe, as appears to be the opinion of the majority, that the Arizona Supreme Court's opinions in *DeElena v. Southern Pacific Company*, 121 Ariz. 563, 592 P.2d 759 (1979), and *Southern Pacific Transportation Company v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975), were intended to establish a new principle of law for Arizona, enabling a finding of wanton and willful conduct based merely upon simple acts of negligence. While in some cases the nature of repeated acts of negligence by defendant might well constitute sufficient evidence of a callous disregard by the defendant of the rights of a plaintiff, thereby justifying the giving of a punitive damages instruction, this principle cannot be expanded so as to equate, in all cases, simple acts of negligence to that type of conduct which has

---

**2.** Apparently the particular jury here involved came to the same conclusion, since it refused to award punitive damages. The issue warrants discussion in this concurrence because of the probability of the recurrence of the punitive damages issue in the event of a new trial.

traditionally been recognized as justifying submission to the jury of the issue of punitive damages.